## CHARLESTON.

PEARL MARTIN *et als. v.* STATE COMPENSATION COMMISSION

(No. 6582)

Submitted September 10, 1929. Decided September 17, 1929.

*A. J. Horan,* for appellant.

*Howard B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for the State.

584

LIVELY, JUDGE:

Walter Martin, about 50 years of age and weighing 180 pounds, apparently in good health, went to and began his work as a coal loader in the mine of Kelly Creek Colliery Company on the morning of June 14, 1928. About noon of that day he requested his son-in-law, who was working in the mine, to assist him in moving a loaded mine car a distance of forty feet so that he could make some repair to the track in the room of the mine where he was working. The car with its contents weighed about two and one-half tons. They put their shoulders to the car and shoved it the desired distance. Just after shoving the car Martin complained of a hurting in his chest and sat down on some dust in the mine saying that he intended to smoke. Probably ten minutes after he had taken his seat, his son-in-law, McGraw, heard some unusual sounds from him and on going to Martin discovered him gasping, and in a few minutes he expired. The following day an autopsy was performed by Doctors Markell and Nolan, Doctors Hudnall and Hopkins being present and observing the autopsy, from which it appeared that Martin's heart was greatly enlarged, the heart muscles had undergone fatty degeneration, and that there were many friable negetations on the mitral and aortic valves varying in size from a pinhead to a pea; and the doctors present considered that the death was caused by heart disease. Martin's widow made claim to the Workmen's Compensation Commissioner for herself and dependent children, and the circumstances and cause of the death were investigated by the Compensation Department and the claim was refused by the Commissioner on August 17, 1928, on the ground that Martin's death was caused by heart disease and not by injury received in the course of and resulting from his employment. The case was appealed to the Board of Appeals consisting of the Governor, the Commissioner of Labor, and Commissioner of Health. Additional evidence was taken before that Board, which, on January 24, 1929, sustained the order of the Compensation Commissioner denying compensation; from that order this appeal was taken.

We are confronted at the threshold of the case by a motion to dismiss this appeal as improvidently awarded on the ground that the appeal to this ·Court was not taken within ninety days from the date of decision by the Compensation Commissioner. It is argued that the applicant took the wrong course in appealing the case to the Appeal Board, because the Commissioner had denied compensation and had made no award, whereas, the statute provides that where the Commissioner has made an award then the applicant may appeal to the Appeal Board; wherefore, it is argued, that where the claim is denied on any ground going to the foundation ·of the claim, then the appeal must be made direct to this ·Court. We have decided that technical rules of procedure ·do not apply to compensation cases, giving the act a broad and liberal interpretation. The Appeal Board took jurisdiction and the Commissioner, by Mr. Graham, one of his departmental heads, appeared and assisted in the presentation of the case to the Appeal Board. No objection seems to have been made to the jurisdiction of that Board; and it is upon the evidence there taken that the case is now presented here. 'There was a consistent effort on the part of the widow to assert her claim; and we decided last week in the case of *Conley* v. *The Compensation Commissioner*, 149 S. E. 666, that under circumstances of this character the claimant should not be deprived of her appeal.

The evidence of the doctors who performed the autopsy together with the evidence of Doctors Hudnall and Hopkins, both of the latter having been present when the autopsy was performed, was again taken at length before the Appeal Board. In addition to their testimony, the claimant examined Dr. Swint, his evidence being based on a hypothetical question. On the examination of the case before the Compensation Commissioner, Dr. Hudnall said he was present when the autopsy was made and considered the cause of death to be chronic endocarditis and chronic rheumatism, and anything Martin might have done would have produced the same result. However, upon the examination before the Appeal Board, he stated in answer to a hypothetical question propounded to him that the proximate cause of the death was the

exertion of the employee in moving the loaded car of coal. Likewise, Doctors Swint and Hopkins gave it as their opinion in answer to a hypothetical question that exertion in moving the loaded car was the proximate cause of the death. The evidence of Doctors Nolan and Markell is to the effect that death was caused by chronic endocarditis, that this condition had been long standing, and that death might have occurred from that cause at any time; but that the exertion caused by pushing the car could not have caused the death without the existing organic disease; and that it is possible and probable that the exertion may have contributed to the death. It appears that the forty feet over which the car was moved, was slightly up grade in places and slightly down grade; but to the naked eye it looked as if it was level. It also appears that the amount of energy necessary to move the car was 115 pounds for each pusher. McGraw, in his testimony, says that it required much force and effort to move the car. This is rather indefinite. The hypothetical question propounded to the physicians who said that in their opinion the exertion in moving the car was the proximate cause of the death, details the circumstances and says that Martin put his shoulder to the car and with the assistance of McGraw, *with great effort,* moved the car a distance of about forty feet. The hypothetical question assumes that Martin used great effort transcending in that particular what was actually shown by the evidence. What the answers of the physicians may have been, if the question propounded to them had used the words of witness McGraw or have included therein that it required only 115 pounds pressure from Martin, who weighed 180 pounds, is uncertain. The evidence of the physicians is not quite in accord, which is nothing unusual.

In reviewing the action of the Compensation Commissioner, this Court takes cognizance of questions of law only. *Poccardi* v. *Public Service Commission,* 75 W. Va. 542. We do not decide upon questions of controverted fact; and where there is evidence to sustain the ruling of the Commissioner, it is rarely that such ruling will be disturbed, unless it is plainly against the law. The Commissioner is selected for his peculiar fitness for the position, and acts impartially for all

concerned. And where his opinion and judgment upon controverted facts, is buttressed by the Appeal Board, composed of his Excellency, the Commissioner of Labor, and the head of the Medical Department, we think such finding should have a force somewhat similar to the verdict of a jury on questions of fact. As Judge LITZ said in the case of *Heaton* v. *Compensation Commissioner*, 106 W. Va. 563: "The finding of fact by the Compensation Commissioner should be treated as the finding of a judge, or the verdict of a jury, and will not, as a general rule, be set aside if there is substantial evidence to support it."

We now come to a discussion of the principles of law applicable. Our statute, Code, chapter 15-P, section 25, directs that compensation shall be made to employees (or their dependents in case of death) who shall have received personal injuries in the course of and resulting from their employment.

It is a very well settled principle that an employee is not deprived of compensation because he is afflicted by some malady at the time he enters the employment. The act applies to every employee who suffers disability from accidental injury, and does not exclude the weak and those imperfect physically. *Caldwell* v. *Compensation Commissioner*, 106 W. Va. 14. But this does not dispense with the necessity of showing that the injury was actually caused by an accident or injury received in the course of and arising from the employment. *Lightbrown* v. *Insurance Company*, 2 Wash., Workman Com. Cases 243. Our statute so requires. There is a great mass of decisions involving claims where the applicant was afflicted with heart disease at the time of the alleged injury. These decisions are discussed and listed in the text books, and in annotations to decided cases. See Bradbury Work. Com. (3rd Ed.), p. 378, Par. 61, title "Heart Disease"; annotation to *Carroll* v. *Industrial Commission*, 69 Colo. 473, 195 Pac. 1097, 19 A. L. R., 107. Without analyzing and discussing those decisions (which would unduly encumber our Reports), it may be deduced therefrom that compensation will not be awarded where the employee has chronic heart trouble which has reached such a

stage that death is liable to ensue at any time, from any exertion, and death came while he was doing the ordinary work of his employment. See *Coe* v. *Fife Coal Co.*, 2 B. W. C. C. 8; *O'Hara* v. *Hayes*, 44 Ir. L. T. R. 71, 3 B. W. C. C. 586; *Herlihy's Case* (Mass., May, 1929), 166 N. E. 556; *Coal and Iron Co.* v. *Industrial Commission,* (Ill. Feby., 1929), 165 N. E. 161. Applicant's counsel relies upon such cases as *In re Brightman,* 220 Mass. 17, 107 N. E. 527; *Fisher's Case,* 220 Mass. 581, 108 N. E. 381; *Poccardi* v. *Public Service Commission,* 75 W. Va. 542; and *In re Madden* (Mass.), 111 N. E. 379. In the *Brightman* case the employee was the cook on a vessel where he was required to live. The vessel sank in the harbor and it was shown that he over-exerted himself in saving his personal effects and a surveying instrument, which exertion added to the excitement of the unusual occasion caused death, he having a valvular disease of the heart. The extent and seriousness of the pre-existing malady is not shown. The Industrial Accident Board decided for the claimant, and the court refused to disturb that finding. In the *Fisher* case the workman had been subject to an affection of the valves of the heart (how bad does not appear) and after having worked hard in the earlier part of the day suddenly fell to the ground and died after lifting a bag of coal weighing 150 pounds. The medical testimony was that he died from *dilitation of the heart* caused by the abrupt lifting of the load. The Industrial Accident Board found for the claimant and the court on appeal refused to disturb that finding. In the *Madden* case the employee had been suffering from a weak heart and while pulling a heavy carpet she exclaimed she had an awful pain under her heart, immediately ceased work, was taken to the hospital, and was thereafter totally incapacitated. She was awarded compensation. The Industrial Accident Board affirmed that finding, and the court on appeal refused to overrule that finding. In *Poccardi* case, the workman was assisting in carrying a "Jim Pole" and received a strain *resulting in hernia,* was operated upon for hernia and died. Clearly there was a personal injury received by the workman arising out of and in the course of his employment. There was no dispute of fact. That case

has little application here. In the very recent Massachusetts case, *Herlihy's Case,* above cited, decided May 29, 1929, 166 N. E. 556, the workman was suffering from a form of heart disease known as coronary sclerosis, and was loading and hauling sand by means of a two-horse dump cart. He did not get to work early on account of rain and loaded his cart by shoveling sand from the pit into the cart rather hurriedly, putting into the work unusual exertion in order to catch up with his work. After loading, he climbed into the cart and drove away. About 500 yards from the pit he was found dead lying across the axle. A slight cut was over his eye which would not have caused death. The Industrial Accident Board denied compensation and the court on appeal refused to disturb the judgment of the Board. The court said the burden of proof was on the claimant to show that the death was accelerated to the point of disablement by an unusual strain and exertion in the performance of his work, citing the *Madden Case.* The same principle is accentuated in the recent case (Feby. 20, 1929) of *Philadelphia, etc.* v. *Industrial Commission,* (Ill.), 165 N. E. 161; and in *Jakub* v. *Industrial Commission,* 288 Ill. 87, 123 N. E. 263.

In the case under consideration there were no external or internal marks or evidence of injury. Moreover, it is shown that it was not unusual for coal loaders to shove the loaded cars out of their way, although they were not required to do so. It was the ordinary and not unusual labor which he was performing. And under the evidence we cannot disturb the finding of the Commissioner approved by the Appeal Board, that there was no unusual nor extraordinary effort made by the employee in moving the car. In the leading case of *Clover Clayton & Co.* v. *Hughes,* (1910) A. C. 242; 3 B. W. C. C. 275, the workman was suffering from advanced aneurism of the aorta and while doing ordinary work by tightening a nut with a spanner the strain caused a *rupture* of the aneurism resulting in death. The county judge, on conflicting evidence, decided that death resulted from personal injury by accident within the meaning of the act. The House of Lords affirmed the finding; Lord Loreburn saying in the opinion that had he been arbitrator he might have come

to a different conclusion on the facts, but concluded that he was bound by the finding as there was evidence to support it.

There is substantial evidence in the instant case to support the judgment of the Compensation Commissioner and that of the Appeal Board; and although we might have found a different conclusion from the evidence had we been called to do so, sitting in the first place, under the well settled principle enunciated in many of our cases, illustrative of which is Judge LITZ's opinion in *Heaton* v. *Compensation Commissioner*, 106 W. Va. 563, we will not disturb the finding of the Appeal Board.

In compensation cases, as in other cases, the familiar rule is applicable that the burden of proving that there was an injury is upon the applicant, and where the evidence is equally consistent with an injury or no injury, the burden is not discharged. Thus in *Hugo* v. *Larkins*, (1910) 3 B. 228, Elliott's Work. Com. Acts, p. 16, a workman sustained a punctured wound on the hand in April, and in July died from erysipelas. There was a medical controversy as to whether erysipelas could have resulted from the wound, and the finding of the county judge that the workman died from personal injury by accident was reversed. And in *Carpenter* v. *Wandsworth Borough Council*, (1918) W. C. Rep. 28, a workman went to his work in good health but was found lying on the floor later in great pain. At the hospital he was found to be suffering from peritonitis and later died. Two doctors testified that, in their opinion, the man's condition was due to some external violence, such as a blow. There was no direct evidence of injury; and another doctor testified that all the symptoms spoken of in the evidence were equally consistent with peritonitis set up by natural causes. The judge accepted the opinion of the one doctor, and it was held that he was entitled, but not bound, to accept that view, and having done so was justified in dismissing the claim. The cases of *Stambaugh* v. *Peerless Wire Fence Co.*, 198 Mich. 445; *Johnson* v. *Mary Charlotte Mining Co.*, 199 Mich. 218; and *Guthrie* v. *Detroit Shipbuilding Co.*, 200 Mich. 335, strongly support the finding of the Appeal Board. Brevity and space denies more than a citation to them.

We therefore affirm the finding appealed from and dismiss the appeal.

*Affirmed.*