JAMES MOORE *v.* STATE COMPENSATION COMMISSIONER

(No. 7434)

Submitted January 11, 1933.   Decided January 17, 1933.

*Zeb H. Herndon,* for appellant.

*H. B. Lee,* Attorney General, and *R. Dennis Steed,* Assistant Attorney General, for State Compensation Commissioner.

*Howard Van Antwerp, Jr.,* and *Price, Smith & Spilman,* for Kingston Pocahontas Coal Co.

MAXWELL, PRESIDENT:

This case involves a review of the compensation commissioner's refusal of compensation to James Moore on the ground that his injuries were self-inflicted.   The compensation statute expressly denies compensation to a workman on account of injury purposely self-inflicted.   Code 1931, 23-4-2.

In the forenoon of January 9, 1932, while employed as a coal loader in a mine of the Kingston-Pocahontas Coal Company, claimant severed his left index and middle fingers between the first distal and middle joint with an ax.   No one else was present at the time the injury was received.   Claimant says he injured himself accidentally while endeavoring to split a wedge off a block of wood; that as he started the stroke

the handle of the ax caught in his trousers and deflected the blow, causing the blade to strike his fingers.

The ax and block of wood were made parts of the record and are exhibited before us. The ax is of the ordinary single blade type, of heavy rather than medium weight, with a short handle; the full length of metal and handle is 18½ inches. The block of wood is twelve inches long. In thickness it is about three by five inches. Its sides are practically parallel.

According to claimant's statement he placed this block on end on the floor of the mine, holding it at the top with his left hand; his thumb was on the flat side of the block toward his body, his fourth and fifth fingers were on the opposite flat side of the block, and his index and middle fingers lay on the top of the block, extended in the direction of the longest distance across the top. It is evident that these two fingers lying on the block extended at least two-thirds of the distance across the top, leaving exposed beyond the ends of his fingers, a surface less than two inches in width. It was at this limited space that he says he was directing the stroke of the ax. When we consider the shortness of the handle of the ax, it seems highly improbable that the end of the handle caught in his clothing as he says it did.

Simple instinct—the involuntary animal impulse to preserve the members of one's body from mutilation and destruction and to avoid the incident physical suffering—would prompt a normal person, such as this claimant appears to be, not deliberately to expose his fingers to the stroke of an ax as was done in this case, unless there be an endeavor to injure one's self for a purpose.

A few minutes after the injury had been received and the claimant had left the mine, a foreman and another miner inspected the working place or room where the claimant was hurt. Within an hour three other miners made like inspection. All of these men except one of the latter group testify in the case. Three of them testify that the block of wood was 10 or 12 feet in the rear of the point where claimant was stooping at the time he severed his fingers. The other man places this distance at two feet. All are in agreement that the ax was lying about four feet in front of the place where the block rested when the disasterous stroke was de-

livered, and that the severed ends of claimant's fingers lay side by side two feet away on a smooth piece of slate on a ''gob'' pile which consisted of slate, ''bone,'' rock and other refuse material which had been placed along one side of the room or heading. The ax and block of wood likewise were on the ''gob'' pile. These men, all experienced in coal mining, are unable to account for the scattered locations of these articles, and the very striking manner in which the severed fingers lay, unless they were thus placed by the claimant for purposes deemed sufficient by him.

On this evidence can we say that the commissioner's finding that the injury was purposely inflicted is plainly wrong? Unless we can say wherein he was wrong, and why, we must affirm the finding. The finding of fact by the commissioner must be treated as the finding of a judge or the verdict of a jury, and will not, as a general rule, be set aside if there is substantial evidence to support it. *Dowdy* v. *Com'r.*, 112 W. Va. 428, 164 S. E. 495; *Watkins* v. *Com'r.*, 109 W. Va. 409, 157 S. E. 89; *Stepp* v. *Com'r.*, 108 W. Va. 422, 151 S. E. 318. It is only where the commissioner's finding is contrary to undisputed evidence, or at variance with a clear preponderance of the whole evidence that such finding will be reversed. *Sedinger* v. *Com'r.*, 109 W. Va. 51, 152 S. E. 857.

In our opinion the whole circumstances clearly warrant the commissioner's finding. We could in no wise say that it is at variance with reasonable deductions from the facts, both those admitted and those proved.

Of course there is possibility that the finding may be wrong, but it stands as a rational and proper deduction from circumstances which the claimant alone created. In the general affairs of life if the circumstances of one's own conduct are such as to challenge his good faith therein, he must be prepared to accept the reasonable deductions which his acts cause his fellows to make.

The finding of the commissioner is affirmed.

*Affirmed.*