JAMES CHERRY *v.* STATE COMPENSATION COMMISSIONER

(No. 7950)

Submitted May 16, 1934.   Decided June 5, 1934.

*Deem & Moist,* for appellant.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for State Compensation Commissioner.

*Blue, Dayton & Campbell, Arthur S. Dayton, Wm. F. Blue* and *Charles M. Love,* for Hutchinson Coal Co.

LITZ, JUDGE:

This is an appeal from an order of the State Compensation Commissioner, refusing an application for compensation.

The claimant, James Cherry, sustained a fracture of the second lumbar vertebra and other injuries, June 22, 1927, while employed in the mine of Hutchinson Coal Company at Hepzibah, Harrison County, and, after receiving medical treatment and compensation for approximately ten weeks, returned to work, September 12, 1927. He continued thereafter in the service of the coal company, except for an interim of ten months (while engaged with the Seminole Gas Company) until January 15, 1931, when he was compelled to stop work, because of weakened condition of his back, and has not since performed any sort of labor. Dr. C. S. Bates, the company physician, visited Cherry shortly thereafter, and, finding him in bed "complaining with his back", sent him to a hospital at Clarksburg, where he was treated for several days by Dr. H. H. Haynes. Returning home, claimant was again treated by Dr. Bates for several days. Apparently, he is permanently and totally disabled.

By letter of February 5, 1931, Charles W. Moore, of Clarksburg, as attorney for claimant, informed the commissioner that he seemed to have a broken vertebra and was not able to work; and, referring to the serial number of the original claim, solicited advice concerning its status. Upon receiving from the commissioner the desired information, Mr. Moore requested permission of the commissioner to offer evidence showing that claimant had become permanently disabled. In the latter part of March, 1931, an inspector of the compensation department, investigating the claim, secured the affidavit of Cherry, substantially attributing his disability to the injury of June 22, 1927; the affidavit of J. A. Haislip, superintendent of the mine, stating that he did not know

Cherry had ceased work until advised by Dr. Bates that he had been called to see him; the affidavit of Dr. Bates that at the time he attended claimant in January, 1931, his back was "very tender and swollen", but there was no evidence of a recent injury, and that Cherry at the time merely said his back had "gone bad on him". After examining claimant on April 25, 1931, Dr. Haynes advised the commissioner that the teeth and tonsils of claimant were diseased and should be removed. This was done, without apparent improvement to his health. Dr. Charles T. Francis, roentgenologist of Cook Hospital at Fairmont, after making an x-ray examination of claimant in the lumbar region, reported to the commissioner in writing, June 12, 1931: "A radiogram taken through the lateral aspect reveals marked pathology. There is a kyphosis present with the anterior border of the body of the second lumbar being much shallower in depth than that of the posterior. There is quite marked lipping of the anterior margin of the superior articular surface of the second lumbar but the intravertebral space between the first and second lumbar has been preserved. The kyphosis has resulted in a markedly increased distance between the spinous processes of the first and second lumbar. The radiogram reveals some evidence of bony change of the superior and inferior articular facets connecting the first and second lumbar."

By letter dated September 14, 1931, Ronald F. Moist, of Clarksburg, as attorney for claimant, advised the commissioner that his condition had not improved, and enclosed statements of Dr. Russel S. Coffindaffer of Shinnston, and Dr. Haynes in which they attributed the disability to the injury of 1927. After an exchange of letters between Mr. Moist and the commissioner, a hearing was granted, at which evidence was heard, December 9, 1932, as follows: Claimant testified that after returning to work in September, 1927, he "trapped" for about a week and then resumed his duties as brakeman on a motor, which required him regularly to lift machine bits and sand onto the motor; that he also sometimes loaded coal and operated a coal cutting machine; that his back

"would" pain him, causing him "to lay off some" from work; that on or about January 10, 1931, while riding a motor, he was knocked off by his head coming in contact with an electric trolley; that the shock weakened his back, but he continued working after reporting the accident to the pit boss; that some days later, immediately after lifting a box of machine bits, weighing from 90 to 100 pounds onto the motor, he became dizzy and numb, went to bed on reaching home, and has not since been able to work. Dr. Haynes, testifying in behalf of claimant, stated that he treated him for the injury of June, 1927, until he returned to work, at which time the vertebra had healed in "fairly good condition"; that he advised claimant not to attempt heavy work; that when he attended him again in the latter part of January, 1931, for the same trouble, his condition would not respond to medical treatment; that his disability may be due entirely to the injury of June, 1927, or partly to subsequent injury.

J. N. Nuzum, testifying in behalf of the employer, stated that in the latter part of January, 1931, Charles Cherry, a brother of claimant, informed him that James was "down sick in bed", but said nothing about his having received any injury after June, 1927; and that he knew nothing of the alleged injuries in January until the hearing.

Assuming that claimant must rely upon the alleged injury or injuries of January, 1931, as the basis of his right to compensation, counsel for the employer insist that the ruling of the commissioner should be affirmed because no application for compensation was filed within six months after the alleged subsequent injury or injuries. It is argued that the limitation is not only jurisdictional, but that it should be enforced as a matter of right and justice in order to protect the employer and the compensation fund against stale and spurious claims. Conceding the validity of this contention, is the right of claimant to compensation for his present disability dependent upon the alleged injury or injuries of January, 1931? We think not. It does not appear that he sustained

any definite injury at the time he is said to have been knocked from the motor; and apparently he was performing the usual and ordinary duties of his employment, in lifting the machine bits immediately before ceasing work.

It is improbable that claimant would not have informed the doctors, his counsel or the commissioner of the fact if his inability to work had been precipitated by an injury or injuries in January, 1931. The circumstances indicate that his disability, traceable to the injury of June, 1927, increased under the ordinary strain of his service. Compensation was denied the dependents in *Martin* v. *State Compensation Commissioner,* 107 W. Va. 583, 149 S. E. 824, where an employee, afflicted with heart disease, expired soon after assisting another push a loaded mine car (weighing two and one-half tons) forty feet. In the opinion, written by Judge Lively, it is said: "In the case under consideration, there were no external or internal marks or evidence of injury. Moreover, *it is shown that it was not unusual for coal loaders to shove the loaded cars out of their way, although they were not required to do so. It was the ordinary and not unusual labor, which he was performing.*"

In *Poccardi* v. *Public Service Commission,* 75 W. Va. 542, 84 S. E. 242, compensation was allowed an employee for hernia resulting from an unusual strain in lifting. Holding that the evidence established a prima facie case in favor of the claimant, the court, speaking through Judge Poffenbarger, stated: "Greco (the employee) had worked for his employer more than two months. There is no proof of any antecedent infirmity of any kind on his part. In his employment, he was subjected to unusual physical exertion on Friday. He took to his bed on Sunday and his ailment proved to be hernia."

Claimant is not precluded from claiming compensation for the injury of June, 1927, by section 40, chapter 71, Acts 1929 (Code 1931, 23-4-16), limiting the jurisdiction of the compensation commissioner in accepting applications for additional awards in non-fatal cases to one year after the last payment for permanent disability. "The

limitation in section 40, chapter 71, Acts 1929, to the effect that no further award may be made in cases of non-fatal injuries, except within one year after the commissioner shall have made the last payment in any permanent disability case is not retroactive in its operation and does not affect the continuing jurisdiction of the commissioner in cases which had their origin prior to its enactment." *Fuel Company* v. *Compensation Commissioner*, 111 W. Va. 639, 163 S. E. 62.

For the reasons stated, we reverse the order of the commissioner and remand the case for further consideration.

*Reversed and remanded.*