### SECURITY MUT. CASUALTY CO. v. BOLTON et al.

### No. 13093.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 22, 1935.

Rehearing Denied May 10, 1935.

Thompson & Barwise and B. V. Thompson, all of Fort Worth, for appellant.

Clark & Clark, of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

The Security Mutual Casualty Company has appealed from a judgment in favor of Clarence Bolton and Carroll Bolton, minor children of James Bolton, deceased, who at the time of his death was an employee of the Fort Worth Cotton Mill, and the recovery was based on a policy of insurance issued by the defendant in accordance with the provisions of the Workmen's Compensation Statutes of this state (Vernon's Ann. Civ. St. art. 8306 et seq.).

The suit was by J. L. Bolton and Mrs. L. A. Bolton, as next friend of the minor plaintiffs, and their right of recovery was based on allegations that their father, James Bolton, was an employee of the Fort Worth Cotton Mill and while working in the dust and lifting heavy sacks of

cotton-seed meal, weighing in excess of 100 pounds, for loading on a railroad freight car and requiring lifting the same 10 or 15 feet in order to stack them in piles, he strained himself "resulting in internal ruptures of the brain, heart and blood vessels, which resulted almost immediately in his death. Plaintiffs alleged that the exact natures of said injuries are not known at this time but that prior to said injuries said James Bolton was a strong robust person and that on account of said heavy lifting and dust he received internal injuries, as aforesaid, which resulted in his death."

The testimony showed that James Bolton was about 42 years of age, weighed about 167 pounds, and was of stout build. The evidence showed that after working in the mixing seed plant in the cotton-seed oil mill, shoveling hulls into a conveyor for 2 or 3 weeks, he then went to work loading sacks filled with meal on to a freight car. These sacks weighed about 100 pounds each, and after they were placed in the car, he, with the assistance of a helper, would place them in piles 5 or 6 feet high, thus requiring a sufficient lift of the sacks to accomplish that purpose. He worked in that department for 2 or 3 days. On the night of his death he went to work about 7 o'clock, and after he and his helper had loaded 8 or 10 sacks of cotton-seed meal into the freight car, he began to complain of severe pain in his chest and walked home, about a block and a half distant. On reaching his home, he complained of being cold and suffering excruciating pain in his chest; he was then seated in a chair by the stove and expired almost immediately. Some of his coworkers testified that he complained of a pain in his chest while he was employed in the mixing plant and later while he was working in the loading department, and that usually, on such occasions, he would sit down to rest for a short time before resuming his work. His brother and other members of his family testified that he had never complained of any heart trouble and that his health was good up to the time of his death.

Dr. L. F. Rhodes was introduced as a witness for the plaintiff and Dr. Alden Coffey was introduced as a witness for the defendant. Neither of those witnesses had ever been called to treat James Bolton.

Dr. Rhodes testified in part as follows:

"I stated that the disease which is called angina pectoris is a disease of the coronary artery. That is the artery which supplies the heart muscle itself. You ask me to explain to the jury the function of the coronary artery. Every muscle in the body is supplied with a blood supply. The heart is supplied with special arteries which supply the heart itself, that is, the muscles. There are about four arteries there. These arteries furnish the blood supply to the muscle itself.

"When a person has angina pectoris, that is a definite heart disease known to the medical profession, and it is one of the most deadly heart conditions that you can have. Quite a few people have it and it is a commonly recognized disease. It has symptoms as it pursues its course. Sometimes you have pain in the chest, with the pain radiating out into the left arm. * * *

"The pain that I referred to is caused by the inability of the blood to go through these arteries, sufficiently fast enough, in order to stimulate the heart muscle. That is what causes the pain. It is not the stopping up of the artery, but it is the slowing down of the blood supply, the stopping of the flow of the blood through the artery. * * *

"If a patient's heart is in that condition, and he would lift those things and stack them in the car as described, with resulting death, as to whether I would say that the lifting of the sacks precipitated the death at that time or not, I would say that it would be the excessive exertion that would do it. * * *

"Apoplexy is the bursting of a blood vessel in the brain. You couldn't have apoplexy from the bursting of a blood vessel in other parts of the body except the brain. You would have a rupture in that case of a blood vessel, but not apoplexy. Apoplexy is always considered to be the result of a rupture of the blood vessels of the brain. * * *

"Q. Well, if a man died, and you were given this diagnosis here that you were given and then we add to that fact that he was short of breath and had sweat popping out on him and pain in his chest several days before he died, would you still think that it was angina pectoris? A. Yes, sir, I would I think. That is what I would think it was. Those things would make me more certain in my diagnosis.

"Q. As a matter of fact, when a man has that shortness of breath and pain in his chest and has angina pectoris, from the time that he begins to get that, he is a marked man, is he not? A. Absolutely. The man in such condition is going to die sooner or later. A man in such condition might die from walking around or going up a hill, or getting out of a chair, or after eating a heavy meal, or while sleeping in bed, or any of those occasions; also he might die from overexertion."

On redirect examination Dr. Rhodes testified:

"Q. Explain to the jury how exertion or strain or exhaustion brings on the immediate attack? A. Well, whenever you bring on exertion, your heart requires more blood supply, and if it cannot get it, why, he is just done, that is all."

Dr. Alden Coffey's testimony was substantially to the same effect as that of Dr. Rhodes.

The case was submitted to the jury on special issues, preceded by the following definitions:

"By the term injury as used in this charge means damages or harm to the physical structure of the body and such diseases or infections as naturally result therefrom.

"By the term Contributing Cause, as used in this charge, means a condition which, coupled with an existing condition, would produce death, and without which death would not have resulted. It need not be the sole cause, but it must be a concurring cause which contributed to the production of death, and but for which death would not have occurred."

Following are the special issues submitted with the answers of the jury thereto:

"1. Do you find from a preponderance of the evidence that the deceased, James Bolton, received injury on the 14th day of February, 1933, while engaged in the performance of his duties, bearing in mind the definition of the term 'injury' as hereinabove defined for you?

"Answer: Yes.

"2. If you have answered special issue No. 1 above 'no', then you need not answer this question, but if you have answered the same 'yes', then answer this question:

"Do you find from a preponderance of the evidence that the death of the deceased, James Bolton, was the direct result of such injury, if any you have found?

"Answer: Yes.

"3. If you have answered special issue No. 1 above 'yes' and special issue No. 2 above 'no', and only in that event, then answer this question:

"Do you find from a preponderance of the evidence that such injury, if any you have found, was a contributing cause, if any, as the term has been defined for you hereinabove, of the death of the deceased James Bolton?

"Answer: ———

"4. Do you find from a preponderance of the evidence that the deceased James Bolton on the 14th day of February, 1933, and prior thereto, was suffering with a disease known as angina pectoris?

"Answer: No.

"5. If you have answered special issue No. 4 above 'no', then you need not answer this question, but if 'yes', then answer this question:

"Do you find from the evidence that the deceased James Bolton's death was solely and alone caused by the heart disease known as angina pectoris?

"Answer: ———."

After the jury had deliberated on their verdict for some time, they presented to the court this inquiry:

"Your Honor: The jury needs some further instructions as to the difference in meaning of 'direct cause' and 'contributing cause'.

"(1) Does 'direct cause' mean the sole cause or does it refer to the time at which death came?

"(2) Can the exertion of the deceased be both 'direct cause' and 'contributing cause' of his death?"

And in response thereto the trial court gave this instruction:

"Gentlemen of the Jury:

"In response to your inquiry attached hereto, you are instructed that the exertion, if any, of the deceased may or may not be both a direct cause and a contributing cause."

Error has been assigned to the refusal of the trial court to instruct a general verdict in favor of the defendant. It is insisted that the testimony of the doctors shows conclusively that James Bolton was afflicted with angina pectoris before

and up to the time of his death, and that his heart failure from which he died resulted solely from that disease rather than from the injury alleged in plaintiffs' petition. Citing many decisions, such as In re Burns' Case, 266 Mass. 516, 165 N. E. 670; Philadelphia & Reading Coal & Iron Co. v. Industrial Commission, 334 Ill. 58, 165 N. E. 161; Martin v. State Compensation Commissioner, 107 W. Va. 583, 149 S. E. 824; Zelinkoff v. Mountain States Brush Mfg. Corp., 135 Kan. 247, 9 P.(2d) 649; Mooney v. Yeagle, 107 Pa. Super. 409, 164 A. 82; Henderson v. Maryland Casualty Co. (C. C. A.) 62 F.(2d) 107. Also the following Texas cases: Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556; Texas Employers' Ins. Ass'n v. Herring (Tex. Com. App.) 280 S. W. 740.

■ According to our understanding of those authorities, the rule is that if an employee who is protected by the provisions of the Workmen's Compensation Law sustains an accidental injury of the character defined in that law and as defined by the trial court in this case, from which disability or death results, then such injury is compensable even though at the time of his injury he is suffering from some disease or infirmity that renders him more susceptible to such an injury; otherwise he would not be protected unless it could be shown that he was in sound health and free of such infirmity. The Workmen's Compensation Statutes do not impose such a restriction upon his right to compensation and it must be liberally construed.

■ It cannot be said, as insisted by appellant, that the evidence proved conclusively that James Bolton was afflicted with angina pectoris at the time of the alleged injury. While, according to the opinions of the two physicians, such was true, yet the correctness of those opinions was put in issue by the testimony of members of his family, to the effect that he was in sound health, a hard worker, and never complaining of any pain in his chest or heart. Especially so, since the opinions of the physicians were in answer to hypothetical facts testified to by other witnesses and not from any personal knowledge. Tex-

as Employers' Ins. Association v. Moore, (Tex. Civ. App.) 279 S. W. 516; National Life & Accident Co. v. Muckelroy (Tex. Civ. App.) 40 S.W.(2d) 1115; Galveston, H. & S. A. R. Co. v. Harris, 48 Tex. Civ. App. 434, 107 S. W. 108.

And we overrule the further contention that even in the absence of heart disease, the evidence introduced was insufficient, as a matter of law, to sustain plaintiff's allegations that he suffered the injury in the manner and of the character alleged.

■ But we have reached the conclusion that the court erred in failing to submit to the jury whether or not plaintiff was injured in the manner alleged in his petition, rather than in general terms as was done in issue No. 1. Before the issues were submitted, counsel for defendant excepted to that issue on that ground, and that exception is brought forward in an assignment of error here. It is a familiar rule that plaintiff must recover upon the cause of action alleged in his pleadings and he must prove the truth of those allegations. And a suit arising under the Workmen's Compensation Statutes is no exception to that general rule. Commercial Standard Ins. Co. v. Noack (Tex. Com. App.) 62 S.W.(2d) 72; Travelers' Ins. Co. v. Washington (Tex. Civ. App.) 5 S.W.(2d) 783; Associated Employers' Reciprocal v. Brown (Tex. Civ. App.) 56 S.W.(2d) 483; Ellis v. U. S. Fidelity & Guaranty Co. (Tex. Civ. App.) 6 S.W.(2d) 811. Accordingly, the assignment of error is sustained.

■ The issues submitted inquiring whether or not the alleged injury was a contributing cause of the death of James Bolton, coupled with the court's instruction that it could be both a direct and a contributing cause, were, to say the least, confusing and misleading, and should not have been submitted. The controlling inquiry should be limited to whether or not the death of James Bolton was the direct result of the injury, if any. If it was, then the injury was compensable; otherwise it was not, although necessarily it contributed to his death.

The judgment of the trial court is reversed and the cause is remanded.