**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

**v.**

**Arthur H. MASTON, Appellee.**

No. 6826.

Court of Civil Appeals of Texas.
Amarillo.

Feb. 2, 1959.

Rehearing Denied March 2, 1959.

Vickers & Vickers, Lubbock, for appellant.

Huff & Splawn, Lubbock, Forrest Bowers, Lubbock, of counsel, for appellee.

NORTHCUTT, Justice.

This is a Workmen's Compensation case. The case was tried to a jury upon special issues and the jury found that the plaintiff, Maston, sustained an accidental personal injury or injuries to his body on or about August 7, 1956; that such injury or injuries were sustained by him while working as an employee of Plains Co-Operative Oil Mill, Inc.; that he received such injury or injuries in the course of his employment; that he sustained total incapacity from August 7, 1956, but that such total incapacity was temporary and was only for a period of 180 weeks; that he did not and would not sustain any partial incapacity and that plaintiff's incapacity to work was not solely the result of prior injuries, diseases or infirmities or the combination thereof. Judgment of the trial court was entered in favor of the plaintiff upon the findings of the jury. Motion for new trial was made by defendant but was overruled by the trial court. Defendant perfected this appeal and will be hereafter referred to as appellant and the plaintiff will be hereafter referred to as appellee.

Appellant presents this appeal upon nine points of error but discusses them under six headings. We feel that we can best present the matters here involved by discussing appellant's first six points of error together, which are as follows:

## "First Point

"The trial court erred in admitting special issue No. 1 in its present form, for the reason that it failed to limit the jury's consideration to the injury described in Maston's pleadings and sought to be proved by Maston.

## "Second Point

"The trial court erred in refusing to submit appellant's requested Special Issue No. 5 or in the alternative Special Issue No. 6 in that either of said issues would limit the jury's consideration to the injuries alleged and sought to be proven by Maston.

## "Third Point

"The trial court erred in the manner in which it submitted the definition of 'Injury' or 'Personal Injury' by the addition of the words 'Or Incitement, Acceleration, and/or Aggravation of any disease, previously or subsequently existing', for the reason that there was no evidence to support such instruction thereby constituting a comment on the weight of the evidence.

## "Fourth Point

"The trial court erred in the manner in which it submitted the definition of 'Injury' or 'Personal Injury' by the addition of the words 'Or Incitement, Acceleration, and/or Aggravation of any disease previously or subsequently existing', for the reason that there was no evidence to support such instruction thereby constituting a comment on the weight of the evidence for the reason that it allowed the jury to speculate on injuries not plead or proved.

## "Fifth Point

"The trial court erred in failing to declare a mis-trial during the jury argument by appellee's attorney when he told the jury they were required under the court's charge to answer Special Issue No. 1 'Yes' if they believed Maston had aggravated a pre-existing condition.

## "Sixth Point

"The trial court erred in failing to instruct the jury to disregard the argument of appellee's attorney when he informed the jury they were required under the court's charge to answer Special Issue No. 1 'Yes' if they believed Maston had aggravated a pre-existing condition."

Appellee in his notice of injury and claims for compensation stated he was injured while "lifting a 100 lb. container of hulls and while lifting it from the packer to the scales and while in an awkward and strained position severely injured his back and low back together with injuries to his groins and the rupture and contusion of all the nerves, muscles, tendons, ligaments, soft tissue and blood vessels in his back and low back and groins, all of which have rendered him totally and permanently disabled under the provisions of the Workmen's Compensation Act of the State of Texas [Vernon's Ann.Civ.St. art. 8306 et seq.]." Then, in his original petition he pleads as follows:

"that he was engaged in the course of his usual and regular employment for said employer; that while engaged in his employment as an employee, laborer and/or oil field worker for said above mentioned employer, Plains Co-Operative Oil Mill, Inc., plaintiff was suddenly, accidentally and unexpectedly injured in that he was lifting a 100 lb. container of hulls and while lifting the container from the packer to the scales and while in an awkward & strained position, severely injured back and low back and as a result of said accident, plaintiff sustained and suffered the following injuries: ruptured intervertebral disc between the 5th lumbar vertebrae and sacrum; together with severe muscle spasm, anesthesia and severe pain radiating down into the low-

er extremities, together with the rupture and contusion of all the nerves, muscles, tendons, ligaments, soft tissue and blood vessels in the back and low back and all of which have rendered this plaintiff totally and permanently disabled under the terms and provisions of the Workmen's Compensation Act of the State of Texas."
Then, during the trial contends that while lifting a 100 lb. container of hulls and while lifting it from the packer to the scales he fell on his back across the scales and injured his back as contended. Although it is stated in appellee's brief that appellee alleged by a trial amendment about a previously existing physical condition was aggravated, but the trial amendment only refers to a pre-existing condition. There was no pleadings as to what that pre-existing condition was.

The first issue herein submitted together with the court's instructions was as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence that the plaintiff, Arthur Maston, sustained an accidental personal injury or injuries to his body on or about August 7, 1956?

"You are instructed that the term 'Injury' or 'Personal Injury' as used in this charge, shall be considered to mean damage or harm to the physical structure of the body and such diseases and infections as naturally result therefrom or the incitement, acceleration, or aggravation of any disease, previously or subsequently existing by reason of such damage or harm to the physical structure of the body.

"Answer 'Yes' or 'No'

"Answer Yes"

The appellant objected to the court's instruction as to the meaning of injury and personal injury and also the manner of submitting the issue and requested that appellant's Special Issues 5 and 6 be given, which were as follows

"Defendant's Specially Requested Issue No. 5

"Do you find from a preponderance of the evidence that the plaintiff Arthur Maston sustained an accidental personal injury to his back by falling across the scales at the Plains Co-Operative Oil Mill on or about August 7, 1956?
"Answer 'Yes' or 'No'.
"Answer: _____

"Refused

"Robt. H. Bean
"Judge Presiding.

"Defendant's Specially Requested Issue No. 6

"Do you find from a preponderance of the evidence that the plaintiff Arthur Maston sustained an accidental personal injury to his back on or about August 7, 1956?
"Answer 'Yes' or 'No'.
"Answer: _____

"Refused
"Robt. H. Bean
"Judge Presiding"
both of which were refused.

As we understand the contention of the appellee his sole complaint is, under either theory, whether it was by lifting the 100 lb. sack or falling on the scales, it was the injury to his back that caused the injury here complained of. We are of the opinion that the case of Southern Underwriters v. West, Tex.Civ.App., 126 S.W.2d 510, 511 (writ refused) is directly in point here where the court said:

"That the proof and the allegation must correspond is so well established in this State that no authority is necessary, however, we cite the following: Stephenson v. Stitz, Tex.Civ.App., 235 S.W. 271; Automobile Ins. Co. v. Bridges, Tex.Civ.App., 5 S.W.2d 244;

Denison v. League, 16 Tex. 399, 400; Texas Pac. Ry. Co. v. Grimes, Tex.Civ. App., 21 S.W. 402; Cooper v. Loughlin, 75 Tex. 524, 13 S.W. 37.

"The error pointed out above is intensified by the manner in which the issue of injury was submitted to the jury. Special Issue No. 1, of the court's charge, together with the answer thereto, was as follows:

"Do you find from a preponderance of the evidence that the plaintiff sustained an injury in the course of his employment with Ben F. Smith, on or about July 26, 1937? Answer: 'Yes' or 'No.'

" 'We, the jury, answer: "Yes".'

"Plaintiff in error objected to this issue because there was no evidence justifying its submission, and because it was too general and permitted the jury to take into consideration injuries and incapacities other than may have been sustained by the defendant in error, and other than those alleged in his petition, and does not confine the jury to the allegations of defendant in error's petition supported by the evidence, in determining whether or not the defendant in error sustained the personal injuries inquired about. The objection should have been sustained. The pleadings having definitely described in detail the injury alleged to have been suffered by defendant in error, it was not proper to submit the issue in general language so as to include injuries not described in the pleadings. And especially is this true when the evidence conclusively shows that defendant in error did not sustain the injury described in the petition. 41 Tex.Jur. 1092; Traders' & General Ins. Co. v. Low, Tex.Civ.App., 74 S.W. 2d 122, writ of error refused; New Amsterdam Casualty Co. v. Rutherford, Tex.Civ.App., 26 S.W.2d 377; Security Mutual Casualty Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552; Texas Ind. Ins. Co. v. Pemberton, Tex. Civ.App., 9 S.W.2d 65; Casualty Underwriters v. Lemons, Tex.Civ.App., 114 S.W.2d 333."

The charge given in the case at bar as to injury or personal injury has been upheld in certain cases in this state. That kind of charge was approved in the case of Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W.2d 738 (writ refused). We do not disagree with the holding in that case. The pleadings in that case were different from the pleadings herein. There were no pleadings in the case at bar as to any previous disease but pleaded in the alternative a preexisting condition. In the case at bar the sole question as pleaded as to injury was the injury resulting from lifting the 100 lb. sack of hulls. There were no pleadings as to appellee falling across the scales. Although appellant requested a special issue as to the falling on the scales it was refused, but special issue No. 1 as given by the court left that question open for the jury to consider as the issue regardless of any pleading to that effect. The damages here sought were for the damages to the lower back and not in any manner for the aggravation of a disease of the prostate by reason of such damage or harm to the physical structure of the body. It could not be otherwise because there is no evidence to substantiate such a theory. Appellee's own doctor was asked if there was a way in the world that a man in a strain or fall can develop that condition as a result of that strain or fall, and his answer was * * * "No, Sir." According to the only medical evidence introduced the disease herein questioned would not be disabling. Appellee's doctor testified the epididymis trouble wasn't disabling at any time he examined him, and that it would only be disabling at the time he was having the inflammation. But we think under the pleadings and record in this case it was error to so charge. There was no issue here submitted to the jury as to the aggravation of a pre-existing condition nor to what ex

tent. The only issue asked submitted to the jury permitted them to consider any kind of inquiry whether pleaded or not. Our statute states that such terms, referring to injury or personal injury, shall be constructed to mean damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom. This could only mean the disease or infection resulting from the damage or harm to the physical structure. Consequently in this case the damage could only be to the extent of the aggravation of the pre-existing condition. But according to the evidence the strain or fall as here contended could not in any manner affect this pre-existing condition. It cannot be said in this case that the disease or infection resulted from the back injury. Whatever disease or infection appellee had, he had before the injury herein complained of, and any recovery herein should be based upon the aggravation of the disease and not just submitted to the jury on a general definition of injury. When the court charged the jury as to the incitement, acceleration, or aggravation of any disease previously existing and the interpretation placed thereon by the appellant's attorney in his closing argument, we think that was error since it could not be the natural result of the harm to the physical structure of the body because the disease, if any, existed before the injury, and according to the undisputed evidence the strain or fall could not affect this pre-existing condition. In the closing argument of appellee's attorney the following argument and exception took place:

"* * * Dr. Payne says 'Yes, he's got symptoms of a ruptured disk', and how does he explain it? He says 'but the prostate trouble will give you somewhat the same symptoms' and that's the way he explains it. Now, then, they're talking about this discharge beginning six or seven days after this thing happened. Wouldn't it—ladies and gentlemen, wouldn't that be consistent with a fall for him to injure that and re-injure that prostate trouble and that's what brought on the discharge, just exactly like it happened down in Fort Worth when the car rolled into him, don't you see, and the discharge started after that. They told the boy he had a venereal disease and I guess he believe it, but the doctors say you can confuse that with a venereal disease, and Dr. Payne said he didn't have it. Don't you see, a trauma, a force upon that boy's body at that area will cause that to flare up and come back to life, don't you see, and that's another reason why Arthur is bound to be telling the truth because after he hurt himself down there, it's more than passing strange to me that that's when his prostate flared up. That because of that trauma, as the doctor says can cause it to flare up, it did flare up, but simply because he has the prostate trouble, because that is admitted, does not mean in any sense of the word that he, therefore, cannot have back trouble, too, does it? There is no such testimony, the Court has nowhere told you in the charge, that simply because he has prostate trouble he can't have back trouble. That is not the facts and that is not the law. If he had it and aggravated it down there—by injury on the job is meant an aggravation of a pre-existing condition, then you've got to say 'yes' to that first issue, regardless of whether you believe all—

"Mr. Vickers: Now, that's not what the Court instructs on there, Your Honor, as injury on the job meaning an aggravation of a pre-existing condition, so we object to it.

"Mr. Bowers: All right, I'll read it to you, I'll just read it to you. 'You are instructed that the term "injury" or "personal injury" as used in this charge, shall be considered to mean damage or harm to the physical structure of the body and such diseases and infections as naturally result therefrom, or the incitement, acceleration, or ag-

gravation of any disease, previously or subsequently existing by reason of such damage or harm to the physical structure of the body.' Aggravation of a disease previously or subsequently existing. If he aggravated a previously existing condition, he was injured on the job and that is the law and it has been for forty years.

"Mr. Vickers: Again, that is not correct, Your Honor, because that is qualified because it has to be by reason of damage or harm to the physical structure of the body.

"Mr. Bowers: I read the whole thing. I read the whole thing.

"The Court: I believe your time is up.

"Mr. Bowers: Your Honor, just one or two other things, if you'll bear with me just one short minute. They say that this pus and so forth will aggravate that condition and Spurling says that, too. Spurling said neoplasm, don't you recall, Spurling said neoplasm can give the same effect. Neoplasm, that's what Spurling said in his book. Now, then, you can go down there—you can go out there and you can say 'Arthur, the truth is not in you', but you can't—ladies and gentlemen, you cannot, any way under the sun, get around these x-rays and when it must have happened. I say total and permanent disability, or if you want to give him total for two or three years, followed by 70 or 80 percent partial, you could do that, too. I thank you for Arthur and on his behalf, talking for him, I ask you to say ' * * * he was totally and permanently disabled, or a lesser degree, as you might find.' Thank you very, very much."

The court did not instruct the jury not to consider this argument although attorney for appellant objected to the argument he did not request the court to instruct the jury not to consider the argument. We think this is clearly shown when the jury found appellee was totally incapacitated for a period of 180 weeks, when appellee's own doctor testified the trouble here in question wasn't disabling at any time he examined the appellee, and that it would only be disabling at the time he was having inflammation. There is no testimony about how long this inflammation existed or was likely to exist or that it was permanent. But there it was so strongly brought out in this manner, we think it would be more impressive on the jury of the correctness of the contention as to the pre-existing condition. By the court's Special Issue No. 1, the court asked the jury to find whether the appellee sustained an accidental personal injury. The issue was not limited to any certain injury pleaded by the appellee nor the evidence concerning the injury. The issue was too general under the evidence in this case, and asked the jury if appellee received any kind of an injury regardless of whether it was to his back as contended by appellee or some other portion of his body not even in question. Under the charge and the above argument, we think, left the jury to consider the pre-existing condition which under all the medical evidence could not be affected by the strain or fall. The appellant objected to the issue and tendered issues to be given, and we think the error comes clearly under the rule announced in the case of Southern Underwriters v. West, supra, above mentioned. In the absence of proper pleadings and evidence as to the disease and the extent of its aggravation and the charge as given concerning the previously existing disease, coupled with the argument of appellee's attorney as to the meaning of such charge, would, we think, require reversal of this case even if we were in error as to the charge alone. Because of the matters herein presented, we think the case should be reversed.

The judgment of the trial court is reversed and remanded for another trial.

CHAPMAN, Justice.

I respectfully dissent.

The judgment of the trial court, based upon a jury verdict in this case, has been reversed by the majority opinion because of the method of submission of Special Issue No. 1, the question inquiring if appellee sustained an accidental personal injury, and because of the argument to the jury made by appellee's attorney concerning said issue and explanatory instruction given in connection therewith. The issue with instruction given is as follows:

"Do you find from a preponderance of the evidence that the plaintiff, Arthur Maston, sustained an accidental personal injury or injuries to his body on or about August 7, 1956?

"You are instructed that the term 'Injury' or 'Personal Injury' as used in this charge, shall be considered to mean damage or harm to the physical structure of the body and such diseases and infections as naturally result therefrom or the incitement, acceleration, or aggravation of any disease, previously or subsequently existing by reason of such damage or harm to the physical structure of the body."

The majority opinion has said, "The issue was not limited to any certain injury pleaded by the appellee nor the evidence concerning the injury. The issue was too general under the evidence in this case, and asked the jury if appellee received any kind of an injury regardless of whether it was to his back as contended by appellee or some other portion of his body not even in question."

I believe the holding of the majority opinion is contrary to the rules approved by our Supreme Court in denying a writ outright (writ refused) in Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W. 2d 738, and in the pronouncements of the court through their late Chief Justice Alexander in Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280, 283.

The issues given in each case inquiring whether the claimants suffered accidental personal injuries on a certain date were of a general nature and almost identical to Issue No. 1 in the case at bar, as were the definitions given in connection therewith. Also the objections made to the issues and explanatory definitions were practically identical to the objections made to our corresponding issue and definition.

In the Parker case it was alleged that poisonous and noxious gases injured the respiratory system and excited and accelerated a dormant tubercular condition. In the Boswell case the insurance company contended the disability of the employee was due to a prior illness, arthritis, just as appellant in our case contended the disability was due to a prior illness, prostate infection. In both of those cases the trial court's issues and definitions, practically identical with ours, were held to be proper. The Supreme Court in the Boswell case said:

"There appears to be some conflict among the decisions of the Courts of Civil Appeals of this State as to whether an issue submitting to the jury the question of an employee's injury in a workmen's compensation case should confine the jury to the injuries set out in the pleadings. * * * It is held by some Courts of Civil Appeals, and especially in previous opinions of the Fort Worth court, that the issue must set out the specific injuries alleged in the petition and raised by the evidence and confine the jury to the consideration of such specific injuries. Security Mut. Cas. Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552, par. 4; Casualty Underwriters v. Lemons, Tex.Civ.App., 114 S.W.2d 333, par. 2; Southern Underwriters v. Wright, Tex.Civ.App., 142 S.W.2d 297, par. 4. In another line of cases it is held that where several injuries are alleged the only proper way to submit the same is to submit each alleged injury separately, and that to submit all of the injuries in one

question is objectionable. Texas Employers Ins. Ass'n v. Watkins, Tex.Civ. App., 135 S.W.2d 296; Traders & General Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391. Other courts hold that it is sufficient to inquire whether the employee sustained an accidental injury to his body on the occasion in question, without the necessity of setting out the various injuries mentioned in the pleadings. Southern Underwriters v. Thomas, Tex.Civ.App., 131 S.W.2d 409; Southern Underwriters v. Cooper, Tex.Civ.App., 138 S.W.2d 563, par. 10; Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W.2d 738, par. 1, writ refused; Traders & General Ins. Co. v. Wright, Tex.Civ.App., 144 S.W.2d 626, par. 4, writ refused; Postal Mut. Indemnity Co. v. James, Tex.Civ.App., 154 S.W.2d 148, par. 2; Hartford Accident & Indemnity Co. v. Vick, Tex.Civ.App., 155 S.W.2d 664, par. 1. *We are of the opinion that this latter rule is the better one.*" (Emphasis added.)

It is significant to note that in the group of cases cited for following the better rule is Southern Underwriters v. Parker, supra [129 S.W.2d 741]. The court in that case quoted with approval as follows: "All of appellee's evidence tended to establish the alleged injury on October 9, 1933, and no other. Appellant's testimony was to the effect that appellee received no injury on October 9, 1933. The whole controversy centered around the alleged bodily injury of appellee on October 9, 1933. We do not see how the jury could have been misled to any extent by this issue. There was no claim made by appellant that appellee was injured on some other date than the one alleged by him, * * *."

Exactly the same situation is true in our own case. All of appellee's evidence tended to establish the alleged injury on August 7, 1956, and no other. Appellant injected into the case a prior physical disability which required a trial amendment to the pleadings that alleged in the alternative that

in the event he be mistaken in alleging that all of his own disability and incapacity was a direct and proximate result of the injuries received on or about August 7, 1956, *and in that event only* he alleged that he seriously aggravated a previously existing physical condition, which, coupled with the injury on that date caused him to be totally and permanently disabled under the Provisions of the Workmen's Compensation Act of the State of Texas. There was no claim or testimony of any one that appellee was injured on some other date than the one alleged by him, and I do not believe the West case relied on in the majority opinion is analogous to our case. That case held "the evidence conclusively shows that defendant in error did not sustain the injury described in the petition." [126 S.W.2d 511] The evidence of Dr. Estes in our own case shows conclusively appellee did suffer the injury complained about and for which the jury permitted him to recover. (Emphasis added.)

I believe the issue and definition given was proper under the record in this case and the authorities above cited. But in any event appellant has not shown any injury such as to justify reversal. Both doctors testified appellee was suffering from a congenital defect which made him more susceptible to prostate trouble. Doctor Estes testified his disability was due to the injury received on August 7, 1956, while working at the oil mill, while Doctor Payne testified in effect that any disability he had was due to prostate infection. It is obvious that the jury believed Doctor Estes' theory of appellee's disability because they gave him more disability than the evidence would have allowed under any theory of the case for incitement, acceleration, or aggravation of any previous disease.

Certainly I cannot see how it could be said that the argument constituted reversible error. The majority opinion cites no case in support thereof and I have not found one with a record even akin to this one where similar argument was held to be reversible even before our new rules were

promulgated. If the issue and instruction was substantially correct, and the Supreme Court in the cases above cited have held that such an issue and instruction is correct, the deductions made in the argument could not be such as to send this case back for another trial.

Since Rules 434 and 503 of Vernon's Annotated Texas Statutes became effective a much more onerous burden rests upon appellant in reversing a case upon the ground that the trial court has committed an error of law in the course of the trial. In Vol. 31, No. 1, page 17, Texas Law Review, Justice Calvert of our Supreme Court, in writing on "The Doctrine of Harmless Error in Texas" has said, in speaking of the trend the Supreme Court has followed since such rules became effective, "The court seems to be developing, slowly, but surely, a policy of refusing to set aside or reverse judgments for errors of law committed during the trial unless in the sound judgment of the court the errors contributed in a substantial way to bring about an unjust result." The same judge wrote substantially the same rule in Walker v. Texas Employers' Insurance Association, 155 Tex. 617, 291 S.W.2d 298, 301 when he said:

"Before an error may be made the basis of reversing a trial court judgment the appellate court must be satisfied that the error complained of 'was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case.' Reversal may not be predicated upon a simple showing that error occurred and that the jury returned a verdict in some respects favorable to the party, the error was reasonably calculated to help. If it could, the further provision of Rules 434 and 503 that it must also appear that the error 'probably did cause, the rendition of an improper judgment' would be meaningless and pointless."

The only possible way the majority opinion can justify holding the errors, if any,

contributed in a substantial way to bring about an injust result, would be to say Doctor Estes' testimony is not entitled to belief. The jury has already decided that issue in favor of the evidence given by Doctor Estes, and this court has no legal right to resolve itself into a trial court and pass on the credibility of witnesses.

It is my belief that the judge below tried the case carefully and that under the rules of law heretofore announced and approved by our Supreme Court this case should be affirmed.