# CHARLESTON.

GAETANO POCCARDI, ROYAL CONSUL, ETC. v. STATE COM-
PENSATION COM'R. GIOVANNI CUCCA CLAIM.

Submitted January 10, 1917.    Decided January 11, 1917.
(Opinion filed February 27, 1917.)

1. MASTER AND SERVANT—*Workmen's Compensation Act—Dependency.*
     By paragraph 3, section 33, chapter 10, Acts of 1913, to en-
     title one to participate in the Workmen's Compensation Fund he
     must have been at the time of the injury causing death a de-
     pendent in whole or in part for his or her support upon the
     earnings of the deceased employee. (p. 687).

2. SAME—*Workmen's Compensation Act—Findings of Commission-
     er—Review.*
     Section 43, of said act, does not, as does the English statute,
     and some of the statutes of the other states, make the findings of
     the court or commissioner on the question of dependency conclusive,
     and on appeal to this court the findings of the commissioner may
     be reviewed on the evidence before him. (p. 687).

3. SAME—*Workmen's Compensation Act—Dependency—Question for
     Jury.*
     The question of dependency in England and in this country,
     under Workmen's Compensation Laws, is one of fact and not of
     law, to be determined by the evidence in each particular case; but
     where the evidence is all certified and there is no conflict, a question
     of law, and not of fact, may be thus presented. (p. 688).

4. SAME—*Workmen's Compensation Act—Findings of Commissioner—
     Effect.*
     While under our statute the findings of the commissioner is not
     conclusive, it should be treated as the finding of a judge, or the
     verdict of a jury, and should not as a general rule be set aside if
     there is evidence to support it. (p. 688).

5. SAME—*Workmen's Compensation Act—Recovery—"Dependent."*
     The word "dependent", in our act, as in the British act, and the
     acts of other states, means dependent for the ordinary necessaries
     of life, for one of his class and social station in life, taking into
     account the financial and social position of the recipient. The ex-
     tent or degree of the dependency is not important. If dependency
     existed at all right to participate in the fund is established.
     (p. 689).

6. SAME—*Workmen's Compensation Act—Dependency—Determination.*
     And the question in such cases is not whether the claimant could

have maintained himself and family with the bare necessaries of life without the assistance of the earnings of the injured or deceased employee, but whether he was actually dependent upon such earnings for his support and maintenance.    (p. 689).

Appeal from order of State Compensation Commissioner.

Proceeding under Workmen's Compensation Act by Gaetano Poccardi, Royal Consul, etc. (Raffaele Cucca and Anna Luigia Pirisi, claimants), to obtain compensation for the death of their son Giovanni Cucca. Compensation was denied by the State Compensation Commissioner, and claimants appeal.

*Order of Commissioner affirmed.*

*A. A. Lilly,* Attorney General, and *Frank Lively,* Assistant Attorney General, for appellee.

MILLER, JUDGE:

Upon an appeal from the final action of the State Compensation Commissioner, denying to the claimants, Raffaele Cucca and Anna Luigia Pirisi, respectively the father and mother of Giovanni Cucca, deceased, right of participation in the Workmen's Compensation Fund, as persons partially dependent on his contribution for their support.

Claimants are citizens and residents of the Kingdom of Italy; their son Giovanni Cucca, a subject of that Kingdom, was killed in a coal mine of the New River Collieries Company, at Eccles, West Virginia, in April, 1914.

The Commissioner found as a fact that the claimants had not proven themselves to be such dependents within the provisions of the Workmen's Compensation Act, as entitled them to participate in said fund, and denied them relief on this ground alone.

Paragraph (3) of section 33, chapter 10, Acts of 1913, the statute then in force, defines "dependent", as used in said act, to mean "a widow, invalid widower, child under the age at which he or she may be lawfully employed in any industry, invalid child over such age, father, mother, grand-father or grand-mother, who at the time of the injury causing death

is dependent in whole or in part for his or her support upon the earnings of the employe."

Claimants are, therefore, of the class or classes of persons entitled to participate in said fund if in fact dependents. The evidence of dependency presented by them consisted of very brief affidavits, one by the father, of November 8, 1914, supplemented by another explanatory of the first, of January 18, 1915; one of January 18, 1915, by a neighbor and frequent visitor in the father's home, and who had assisted him in his correspondence with his son in the United States; another of June 21, 1914, by four witnesses, and four certain so called transmission receipts, showing remittances by deceased to his father in Italy as follows: One of December 29, 1911, for 100 lire; one of April 4, 1912, for 200 lire; one of August 5, 1912, for 150 lire; and one of January 2, 1913, for 250 lire. There is also filed another receipt of November 21, 1912, showing transmission to decedent's grandmother, ·not a claimant, of 20 lire.

The substance of the affidavits of the father is that deceased was in the habit of sending him on an average of 1500 lire annually, or an average of 125 lire per month, of which he used 90 lire in the exclusive support of the family, "family" being explained in his supplemental affidavit to mean himself and his wife, deceased's mother, though he sent that amount for the family, for, he says, he used to provide for the needs of the family with his work; the balance of the money to remain subject to the disposition of the son. The affidavit of the friend and neighbor is to the effect that he assisted the father in correspondence with the son and read a letter from the latter in which, as his testimony is translated, the son "stated that he would have sent 125 lire monthly for the support of his parents", and that the father answered saying "that for his support and that of his wife he would have used ninety lire, and that he would take care of his children with his own work, the remainant he would have saved for and on account of his son", that the son "replied to the disposition of his father authorizing him to spend even more." The affidavit of the four persons is that during the time the son was in America he "provided to the support

of his family with an average of about 1500 lire yearly, and that the said family has no other means besides the earnings deriving from the daily work of the father Raffaele Cucca.'' How these witnesses were qualified to testify to these facts does not appear.

There is no evidence as to what estate claimants possessed, nor as to the amount of the father's earnings; nor is there any sworn testimony as to his age, or the character of his employment, nor as to his social station, except what may be inferred from the other facts shown; nor is there any evidence as to the earning capacity or earnings in fact of the other members of the family; nor as to how much of these earnings was actually used or actually necessary for the support of the family; the only evidence submitted on these questions being the certificate of the mayor of the home town in Italy showing that the other members of the family consisted of two brothers and two sisters, and stating that this family is ''in poor economical conditions.''

Does this evidence, as a matter of law, conclusively establish the fact of dependency? It will be observed that there is no evidence of any actual remittances by deceased to claimants within one year of his death; the correspondence referred to by one of the witnesses between father and son is not produced, or accounted for. Whether deceased actually sent any money to claimants within the year preceding his death is left to be inferred from the general statement that deceased was in the habit of sending his father about 1500 lire yearly, a fact which no doubt could and should have been shown by positive evidence, if the fact was as we are asked to infer. So far as appears there was no legal obligation on deceased to contribute to the support of his father's family. For aught that appears he may have ceased to do so for at least a year prior to his death. Our statute giving right to dependents to participate in the Workmen's Compensation Fund is limited to one of the class enumerated, *"who at the time of the injury causing death* is dependent in whole or in part for his or her support upon the earnings of the employe.'' On this evidence the Commissioner might, perhaps, have found differently, but was he bound to do so, and can

we properly say he erred in his conclusions? We do not think we should say so. He was not satisfied with the proof of dependency. He has the power at any time to change his prior rulings on a better showing: Section 40, chapter 10, Acts 1913. Section 43, chapter 10, Acts 1913, does not as does the English statute, and the statute of Massachusetts, and perhaps the statute of other states, make the findings of fact by the Commissioner conclusive. *Herrick's Case,* 217 Mass. 111; *Powers* v. *Hotel Bond Co.,* 89 Conn. 143; 1 Honnold on Workmen's Compensation, p. 823, section 242 and cases cited; *In Re Janes,* (Mass.) 4 N. C. C. A. 552. Our statute says: "The supreme court, on such appeal, shall determine the right of the claimant and certify its decision to the commission, and, if it determines the right in his favor, the commission shall fix his compensation within the limits and under the rules prescribed in this act." This statute no doubt gives us right to review the findings of the Commissioner on the evidence presented to him.

And it seems to be now settled law in England, under the English act, and in the states of this country having workmen's compensation laws, that the question of total or partial dependency is one of fact and not of law; that there is no presumption of law as to the fact of dependency respecting any claimant. At one time the decisions left this question in doubt. 1 Honnold on Workmen's Compensation, p. 224, section 70, and notes; 1 Bradbury's Workman's Compensation, 583; Dawbarn's Workmen's Compensation Appeals, 1910-1912, 88. The English cases of *Davies* v. *Main Colliery Co.,* (1899), 1 W. C. C. 92; *Main Colliery Co.* v. *Davies,* (1900) 2 W. C. C. 108; and *Hodgson* v. *Owners of West Stanley Colliery,* (1910) 3 B. W. C. C. 260, decisions of the House of Lords on appeal, finally settled the question in England. But there, as here, when the evidence is all certified and there is no conflict it may be presented as a question of law whether there was any evidence on which the findings of the commissioner or court could have been made. *In Re Herrick,* 4 N. C. C. A. 554, point 2 of the syllabus.

While under our statute the findings of the commissioner are not conclusive on the fact found, we think his finding

should be treated substantially as the findings of a judge, or the verdict of a jury, and should not be set aside if there is evidence which will support it. It was so held in Massachusetts, not as to a question of dependency, but as to whether or not the person for whose death compensation was sought was in the employ of the insured at the time of the injury. *Pigeon* v. *Employers Liability Assurance Corp., Ltd.,* (Mass.) 4 N. C. C. A. 516; *Poccardi* v. *Pub. Serv. Com.,* 75 W. Va. 542.

On the evidence in this case can it be said as a matter of law that at the time of his death claimants were dependents in whole or in part for their support upon the earnings of deceased? The Commissioner found the evidence insufficient to support this claim. Some decisions say the dependency does not necessarily mean absolute dependency for the necessities of life, but that it is sufficient that the contributions of the workman are looked to for support in the maintenance of the dependents' accustomed mode of living. Glass on Workmen's Compensation Law, 248, and decisions cited. In the leading case of *Simmons* v. *White Brothers,* 1 Workmen's Compensation Cases, 89, it was decided that "dependent", in the British act, "means dependent for the ordinary necessaries of life for a person of that class and position in life, taking into account the financial and social position of the recipient", and that "deriving benefit from earnings is not necessarily being dependent upon them." The same rule was announced in *Main Colliery Co. (Limited)* v. *Davies, supra,* where it was said: "The extent to which such dependency existed was not a matter for their Lordships to consider. The learned County Court Judge might have been right or wrong as to the exact degree to which that state of things existed; but if it existed at all the appeal must be dismissed." In that case the wages of the deceased, a boy, and a member of the family, was the matter in question, and it was shown that he contributed his wages to his father, the head of the family, and that the father actually depended in part on those wages to support the family.

The question in these cases is not whether by skimping, the claimant could have maintained himself or his family

with the bare necessaries of life, or maintained himself without the assistance of the earnings of the injured or deceased employee, but whether he was actually dependent on such earnings at the time of the injuries for his reasonable support and maintenance. Elliott on the Workmen's Compensation Act, (7th ed.) 268, and cases cited; Boyd on Workmen's Compensation, p. 1077, section 496. And it was held in *Powers* v. *Hotel Bond Co., supra,* that partial dependency may exist though the contributions made by the workman were at irregular intervals and in irregular amounts, and though the dependent have other means of support. But under the statute of Rhode Island it was decided that a father who was able out of his wages to support himself and wife, and save three or four dollars per week, is not a dependent upon the son. *Dazy* v. *Apponaug Company,* (1914) 36 R. I. 81, 4 N. C. C. A. 594. The court in that case said: "The test of dependency is not whether the petitioner, by reducing his expenses below a standard suitable to his condition in life, could secure a subsistence for his family without the contributions of the deceased son, but whether such contributions were needed to provide the family with the ordinary necessaries of life suitable for persons in their class and position. * * * * * The expression 'dependent' must be held to mean dependent for the ordinary necessaries of life for a person of his class and position, and does not cover the reception of benefits which might be devoted to the establishment or increase of some fund which he might desire to lay aside." The fact that a son has sent money out of his earnings to his father is not conclusive of the question of dependency. Mathew, L. J., in *Howells* v. *Vivian & Sons,* 4 W. C. C. 106, 109, says: "I agree that it is not decisive of the question of dependency that the deceased workman did contribute to the family fund, or, on the other hand, that the father could support the family without that contribution."

For the foregoing reasons we are of opinion that the order of the State Compensation Commissioner was on a former day properly affirmed.

*Order of Commissioner Affirmed.*