# CHARLESTON.

SEDINGER *v.* STATE COMPENSATION COMMISSIONER, *et al.*

(No. 6738)

Submitted April 8, 1930.  Decided April 15, 1930.

*W. L. Taylor,* for appellant.

*Howard B. Lee,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *Chas. D. Smith,* for respondents.

MAXWELL, JUDGE:

L. H. Sedinger, committee for E. D. Swaney, a convict, prosecutes this appeal to an order of the state compensation commissioner refusing compensation to Swaney for injuries sustained to his right eye on the 15th day of November, 1928, while in the employ of Crystal Coal & Coke Company.

On the day stated claimant was struck in his right eye by some falling coal.  He left the mine immediately, and went for medical attention to the company physician, Dr. Dana T. Moore, who administered temporary treatment and sent the patient to Drs. Davis & Holcomb, eye specialists at Logan. In his first statement with reference to this case, Dr. Moore

said that he could not see any sign of injury to the claimant's eye, although the pupil seemed to be dilated. The doctor made two subsequent statements. In one of them he said that he recollected that claimant came to his office with a handkerchief over his eye and with blood coming out of the eye. In his last statement he confirms the second statement and says that at the time he made his initial statement with reference to the case he was not in his office but was away from his records and did not have the matter clearly in mind. Dr. Moore also says, that on the 7th day of November, 1928, just before the claimant entered the employ of the Crystal Coal & Coke Company, he made a physical examination of claimant and at that time claimant's eyes appeared to be normal.

Dr. Davis, in the first statement made by him, said that his examination of the claimant's eyes showed no signs of injury, no redness nor abrasions. Dr Holcomb, in his first statement, stated that the pupil of claimant's right eye was permanently dilated, and that that condition could have been caused by the alleged injury. In a second statement, Dr. Holcomb said that although there was no visible sign of injury to the fundus, the patient evidently had suffered such injury which had grown progressively worse, and that at the time of making the second statement the vision of claimant's right eye had been reduced to blindness. At a still later time, Drs. Davis and Holcomb made a joint statement, in which they say that when claimant came to their office on the 16th day of November, 1928, they found the pupil of his right eye dilated, and that there was some congestion of that eye; that they have found that the condition of claimant's right eye has grown continuously worse since the date of the injury, and that he had become totally blind in that eye. Dr. Davis stated in the said last-mentioned statement that, although he had said on a former occasion that he found no visible sign of an injury to the fundus of claimant's right eye at the time of the examination in November, 1928, the patient evidently had some injury which had grown progressively worse. These two doctors further say in their joint statement that in the light of the fact that Dr. Moore had found the claim-

ant's eyes to be normal a few days prior to the 15th of November, 1928, they are of opinion "that the blindness which is now in said eye could have been and was caused by the injury he received on the 15th day of November, 1928, and is due to said injury."

The claimant was examined by Dr. V. T. Churchman, an eye specialist, who made a statement with reference to the injury, and in the course thereof said: "There is blindness in the right eye beyond a doubt, but it would be impossible for me to say it was due to the injury claimed on November 15, 1928, as I can find no pathological condition to account for same. From the history of good vision prior to time of injury, and blindness following same might be indicative of some deeper injury, not now able to detect." Dr. F. P. Weltner, an eye specialist, also examined claimant. Dr. Weltner at first thought that claimant was malingering, but he later made another examination followed by a statement in which he said: "The condition is without question one of optic atrophy and not malingering, as I suspected in my first examination. I am unable to find any evidence of injury such as opacities or scars of any kind at any place in this eye. And for this reason cannot believe that the atrophy is due to his alleged injury. Syphilis is suspected." In this connection, however, it is well to observe that A. W. Ferrel, technician for Hatfield-Lawson Hospital at Logan, W. Va., says that he made two blood tests for claimant, one in March, 1929, and the other in August, 1929, and that the result of each test was negative. Several relatives and associates of the claimant state that they never knew of the claimant having any imperfection in his sight prior to the time of the injury on the 15th of November, 1928.

It is urged on behalf of the compensation commissioner, that inasmuch as there is a conflict of evidence and there being substantial evidence to sustain his finding, the same ought to be affirmed by this court. Cases cited: *Martin* v. *State Compensation Commissioner,* 107 W. Va. 583, 149 S. E. 824; *Venilli* v. *State Compensation Commissioner,* 107 W. Va. 544, 149 S. E. 612; *Heaton* v. *Compensation Commissioner,* 106 W. Va. 563, 146 S. E. 368. The *Martin Case* is also cited in

support of the proposition that the burden of proof that there was an injury is upon the applicant, and that where the evidence is equally consistent with an injury or no injury, the burden it not discharged. We recognize the force of those decisions and are not disposed to depart therefrom, but, giving the rules of law announced therein full force and effect, we think that they do not preclude the claimant from obtaining compensation in this case. The evidence introduced on behalf of claimant to the effect that he was in fact injured on the 15th day of November, 1928, while in the course of his employment in a mine of the Crystal Coal & Coke Company, is not disputed. On the second proposition, as to whether the said injury was the cause of claimant's subsequent blindness in his right eye, there is a conflict of evidence, but we are of opinion that the evidence clearly preponderates in support of claimant's contention. While this court accords great weight to a finding of fact by the commissioner, it will not be bound by such finding when it is contrary to undisputed evidence, or is at variance with a clear preponderance of the whole evidence. *Caldwell* v. *Workmen's Compensation Commissioner*, 106 W. Va. 14, 144 S. E. 568.

The compensation commissioner denied compensation to the claimant on the 6th day of July, 1929, stating ''* * * it being the holding of this office that the evidence does not show that the loss of vision of which you complain is due to injury received on November 15, 1928.'' In a communication of October 9, 1929, addressed by the commissioner to the claimant, the commissioner says with reference to the subsequent evidence, which the claimant filed with the commissioner: ''The evidence that you have submitted, some of the statements being sworn to and some not, is contradictory evidence of the same parties who made the statements before. It would appear to me that either one or the other of these statements is wrong. I hardly see how you could consider any of them now, as the last statement you filed repudiates the former one.'' It is true that the later statements of Drs. Moore, Davis, and Holcomb are not in accord with their earlier statements, but the explanation which they give for the variance in their

statements is, at least, reasonably satisfactory. It is not to be presumed that reputable members of the medical profession would willfully make misstatements with reference to the physical condition of a patient; and if, as in this case, the earlier statements of the physicians are not satisfactory to themselves and they are desirous of correcting such statements or amplifying them, they ought to be permitted to do so when there is nothing in the record even to suggest bad faith on their part.

On the whole, we are of opinion to reverse the order of the compensation commissioner, and to remand the cause in order that an award may be made to the claimant in accordance with the provisions of the statute which specifically fixes the basis of compensation for the loss of an eye.

*Reversed and remanded.*