Matilda Hamlet *v.* State Compensation Commissioner, *et al.*

(No. 7430)

Submitted January 11, 1933.   Decided January 17, 1933.

*Love & Love,* for appellant.

*H. B. Lee,* Attorney General and *R. Dennis Steed,* Assistant Attorney General, for respondents.

Kenna, Judge:

Matilda Hamlet on August 18, 1926, filed with the commissioner her claim for compensation as the dependent mother of Myrtle Hamlet who was killed by a fall of slate on August 2, 1926, at the Sun operation of the Stonega Coal Company.   On December 5, 1931, an order was entered by the commissioner declining her claim on the ground that "it has not been shown that the said Matilda Hamlet was the dependent mother within the meaning of the statute, it is therefore ordered that the said claim be rejected." This finding was protested by claimant, a hearing was had, and, after hearing, the finding remaining the same, claimant appealed.

The proof before the commissioner, which is voluminous, shows the following facts which may, for the purpose of this record, be stated as uncontroverted:

248

Matilda Hamlet, claimant, and her husband, Wyatt Hamlet, lived on a small farm near Brookneal, Virginia, with their son, Myrtle Hamlet. Each had been married before and had grown sons and daughters by their respective former unions. They were advanced in years, the wife at the time of filing her claim being sixty-five, and the husband probably ten years older. There were a son and a daughter by the union of Matilda and Wyatt Hamlet; and the oldest son of her former marriage had, about one year before the filing of the claim herein, been killed in the mines of West Virginia. A claim for compensation on account of his death had been rejected. Myrtle Hamlet was the only child of either their former marriages or of their own union who was residing with the aged parents.

In 1925, when Myrtle Hamlet was 22 years of age, he left his parents on the Virginia farm and came to West Virginia. The reason for his coming was that the yield of the farm was insufficient to sustain his mother, father and himself and to provide, at the same time, enough money to discharge an indebtedness of some $300.00 secured by a deed of trust against the farm owned by claimant. He came to this state in an effort to earn money enough for those purposes. For the first four months of his stay in West Virginia, he was engaged in railroad construction work. Leaving this employment, apparently without any interval of time elapsing, he went to work at the Sun operation of the Stonega Coal Company. His earnings upon the railroad construction work do not appear, but for the period of approximately eight months from December, 1925, to the date of his death, August 2, 1926, he earned, while employed by Stonega Coal Company, $993.17, of which amount $624.20 was paid to him in cash, the balance representing a store account. His average bi-weekly earnings were $64.00.

After the death of Myrtle Hamlet, his mother and father were unable to "make it go" on the farm. In 1928, the mother went to Philadelphia to reside with a daughter by her first marriage, and the father to Hat Creek, Virginia, to reside with his daughter by his first marriage; and in 1929, the farm was sold under the deed of trust. Both occurred after the death of Myrtle Hamlet.

The controverted questions are (1) the fact of dependency within the meaning of the statute; and (2) if dependency is established, does the record contain information essential to permit the commissioner fairly to arrive at "the average monthly support actually received from the employee during the preceding twelve months"?

The fact of dependency is clearly established by a preponderance of the proof before the commissioner. Matilda Hamlet testifies that deceased was her main support; that no contributions to her support were made by any of the other children during the year before her son's death; that her husband was able only to help with chickens, cow, calf and the making of garden on the farm, and that she knows of no money earned by him during the year before her son's death; that following her son's death, she and her husband broke up housekeeping in 1928, because they were unable to maintain themselves on the farm which they lost in December, 1929; that the money sent claimant by Myrtle was used in part to make payments upon the indebtedness, but principally for the support of herself and her husband. There is no evidence of any money having been sent from Myrtle Hamlet to his father, whose testimony, though mainly corroborative of that of claimant, is to the effect that though injured in 1922, he was able to work during the year preceding the son's death. However, he fails to show that he earned any money; and explains that because of his inability to support his wife, she had gone to live with her daughter.

Eight disinterested persons, by affidavit, substantiate claimant's testimony relating to dependency and state that they, in a general way, know that Myrtle Hamlet was the main support of his mother. That decedent sent money to claimant is likewise testified to by his brother, Valern Hamlet, and by his sister-in-law, Annie Hamlet, who states also that decedent discontinued boarding at her home and "went to shantying" in order to send more money to claimant. Other witnesses relate of seeing decedent buying money orders and putting money in envelopes, which decedent told them he was sending to his mother; and Thomas Henry tells that on occasions he carried money from Myrtle to his

mother—on one occasion $30.00 and on another $40.00—totalling, he estimates, $205.00, and that he has personal knowledge of Matilda Hamlet's dependency on decedent.

Mattie Hurt, half-sister of the deceased, in her affidavit of October 3, 1929, seems to cast the only doubt upon the question of dependency. According to her statement, claimant and her husband were not wholly dependent on any one of the boys for their support and the other children aided, although she admits that Myrtle helped them more than the others and that the parents left the farm because they could not make a livelihood. She states that at the time of the affidavit Wyatt Hamlet, the father, was working on the state road and had been most of the time since he had been making his home with affiant; and that he comes home on Saturdays and goes back on Sunday evening. To the question propounded by the inspector for the commissioner "Has your father always supported your mother and his family?" the witness replied: "Yes, sir, he has always been able to work and did work, with the exception of the time he was thrown off a mule and injured his leg, this in the year of 1922, he was not able to work for about a year or maybe a little longer." She says further that the father was able to work at his regular vocation from August 2, 1925, to August 2, 1926.

We are of the opinion that the evidence clearly preponderates in favor of claimant's contention of dependency; and we therefore reverse the finding of the commissioner. As stated in *Sedinger* v. *Commissioner*, 109 W. Va. 51, 54, 152 S. E. 857, while this court accords great weight to a finding of fact by the commissioner, it will not be bound by such finding when it is at variance with a clear preponderance of the whole evidence.

The question of whether the commissioner had sufficient proof before him to arrive at "the average monthly support actually received from the employee during the preceding twelve months" presents more difficulty, but we believe that that question, too, must be found in favor of the claimant. It is true that Matilda Hamlet has made at least three statements that contain discrepancies in amounts on this question. In her application for compensation, dated Au-

gust 18, 1926, she stated that Myrtle Hamlet had been contributing to her support the sum of fifteen dollars per week. In an affidavit under date of September 5, 1926, she says that she thinks he contributed at least $400.00 a year, and that he sent her from twelve to forty-seven dollars monthly, while in an affidavit dated August 24, 1929, she actually accounts for specific remittances totalling $297.32 in the twelve months next preceding her son's death. She is supported in her claim of these specific remittances by the affidavit of Thomas Henry; by several letters from Myrtle Hamlet mentioning the remittances made at the time the letters were written and their amounts; by a registered envelope addressed to herself and purporting to have been sent by Myrtle Hamlet; by a money order receipt claimed to have been found among the effects of Myrtle Hamlet; and by what purports to be a sheet from a memorandum book kept by Matilda Hamlet in which she set down some of the remittances she received from her son. In addition, she is, of course, corroborated by the general testimony upon the question already referred to. While we readily appreciate the impossibility of arriving at an exact mathematical calculation from the proof before the commissioner, we do not believe that that kind of determination is required by the statute. The very nature of dependency itself presupposes a relationship in which an exact accounting might not be kept by either the recipient or the furnisher of support. When to this consideration is added a consideration of the situation the parties here were in, their meager education, their apparent lack of thought that such information would ever be important, the fact that this case has been pending for six years and has involved on the part of the claimant the employment of different lawyers from time to time in an effort to supply the proof required by the commissioner, we do not believe that the discrepancies cast any serious doubt upon the good faith of the claimant.

The commissioner should, from the data before him, arrive at some fair determination of the amount of the average contribution to the support of his mother made monthly by the deceased for the twelve-months' period immediately preceding his death. This statement does not preclude the

consideration of additional evidence if it should be furnished the commissioner.

*Reversed and remanded.*