EARL MANNING *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 9395)

Submitted September 2, 1942. Decided September 22, 1942.

*McKee & McKee,* for appellant.
*Austin V. Wood,* for appellee.

Rose, Judge:

This appeal was granted to Earl Manning, an employee of Centre Foundry & Machine Company, from an order of the Workmen's Compensation Appeal Board by which an award in his favor by the compensation commissioner was reversed and annulled.

Manning was the operator of an electric crane. On Monday, June 16, 1941, he reported to his superintendent that on the Friday preceding he had injured his left hand in working the crane, and was, by the superintendent, ordered to report to Dr. Murphy, the company physician. This doctor, after examination on that day, treated him until June 24th, when the claimant resorted to Dr. Weiler, his own family physician. Dr. Weiler hospitalized the claimant under treatment and, on July 18th, amputated the left index finger between the knuckle and first joint. The patient was discharged from the hospital July 27th, but was re-hospitalized from August 10th to September

3rd, and from September 19th to October 17th, owing to unfavorable developments of the hand.

A claim for compensation was made under date of July 22, 1941, without any definite description of the injury or the cause thereof. The employer's report, made under date of June 21, 1941, described the cause of the injury as "operating controller handle on crane, bumping same and injured hand," and the nature and extent of the injury as "contusion of palmar surface of left hand." The commissioner investigated the claim through his agents, procuring affidavits from attending physicians, fellow-employees, representatives of the hospital, the employer's superintendent, and others. On October 31st, an order was made finding the claim compensable and awarding compensation for nineteen weeks upon a temporary total basis at $16.00 per week. Upon a protest by the employer, a hearing was had, based on considerable additional evidence in the form of depositions, resulting on March 7, 1942, in a permanent partial disability award amounting to $16.00 a week for forty weeks, beginning November 1, 1941. Upon appeal by the employer, this award was set aside as above noted.

The claimant asserts that his injury arose from a blow by the heel of his left hand against a sticking control lever which caused immediate excruciating pain, followed by discoloration, swelling and coldness of the fingers of the hand, ending finally in a gangrenous infection of the index finger, necessitating its amputation. He apparently concedes a possible diseased condition of the veins and arteries, but insists that the blow was the immediate and aggravating cause of the acute development. The record shows that he immediately complained to his fellow-workmen, one of whom states that the hand was then swollen and the fingers blue and cold. Dr. Murphy, who examined him on the third day after the injury found "a moderate amount of swelling" in the palm of the hand, and "the tips of all his fingers excepting the thumb cold," and cyanotic. Dr. Weiler, whose first examination was made June 24th, says: "The forearm, wrist and hand

were cold. There was slight erythema of the skin about the wrist and the palm near the wrist. There was slight swelling of the palm of the hand which was tender to palpation. Both the radial and ulnar artery pulses were present but diminished as compared with that of the opposite hand. There was marked coldness of the hand and fingers. The two distal phalanxes of the fingers were markedly cyanotic; also the distal phalanx of the thumb was cyanotic and cold. * * * Sensation in the cyanotic and cold digits is markedly diminished; it being absent in the index finger." This physician later reported that the index finger became "gangrenous down to the proximal interphalangeal joint," necessitating its amputation.

Dr. Murphy's conclusions regarding the claimant's condition were: "* * * that he did have a bruise on the palmar surface of the left hand, opposite the little finger, and that he had a slow progressive disease of the arteries and veins of that hand, which were in no way connected with the injury to the palm of his hand." This disease, called "Buerger's disease," he describes as "thromboangiitis obliterans, involving the first, second, third and fourth fingers * * * characterized by coldness, numbness, and cyanosis," which in regular course would develop into gangrene, by reason of the development of clots in the blood vessels tending toward the stopping of blood circulation in the extremities. He does not think the bruises either caused or contributed to the subsequent diseased condition of the finger. Dr. Weiler reported by letter of July 2, 1941, to the commissioner as follows: "My diagnosis of the peripheral vascular condition was acute thrombo-angiitis of the left upper extremity. I believe that the trauma of June 14, 1941, was an aggravating cause of the vascular pathology." In his deposition, he uses this language "the condition that we are dealing with, resulted from a blow on the palm of the hand against the lever on the crane," and says he found no sign of "Buerger's disease" but did find "inflammatory spasticity" of the veins and arteries, resulting from some diseased condition, and concludes that "if it hadn't been for the injury,

he wouldn't be as he is now." Dr. Snider, called into consultation by Dr. Weiler, says: "My diagnosis was arteritis, which means inflammation of the walls of the arteries, with a thrombosis, or clotting, inside that artery in the left index finger, of unknown origin." He cannot "say definitely that was the cause," and adds that "it is conceivable that it could." Dr. Caldwell, who at the instance of Dr. Weiler, examined the claimant, September 22nd, says that he found "the index finger had been amputated, but the rest of the fingers and the hand was cold, that there was no pulsation at that time that could be felt, either in the hand, wrist, or forearm." He states that: "I relied more on the history of the case, history of the injury, his hand being in a normal condition up to that time, that, as far as this condition, it was due to trauma."

The controlling facts before the commissioner were thus relatively simple and well-established. The conclusions of the medical men testifying therefrom were not in agreement. No question of law arose; facts alone came into consideration; and the commissioner was required to make his own deductions from these facts. He found for the claimant, and this finding, had it been affirmed by the appeal board, would have been beyond disturbance by this Court. *Anderson* v. *State Compensation Commissioner,* 113 W. Va. 742, 169 S. E. 386; *Andrews* v. *State Compensation Commissioner,* 113 W. Va. 238, 167 S. E. 588; *Aniel* v. *State Compensation Commissioner,* 112 W. Va. 645, 166 S. E. 366; *Dowdy* v. *State Compensation Commissioner,* 112 W. Va. 428, 164 S. E. 495. But in the case at bar, the commissioner allowed the claim, while the appeal board, without taking additional evidence, rejected it. Where does the presumption of correctness lie in such a case?

Under the statute the appeal from the commissioner is a matter of right. It is not granted for error. Code, 23-5-3. The appeal board may either hear the case on the evidence which was before the commissioner, or take additional testimony, and then "shall sustain the finding of the commissioner or enter such order or make such award as the

commissioner should have made." Code, 23-5-3. The hearing before the appeal board was, therefore, not a review on error, but a hearing *de novo*. The finding of the commissioner wholly disappears, with all presumptions which might have attached thereto. The appeal board displaces the commissioner, and becomes the sole fact-finding body to be thereafter considered in the case. The order of the appeal board is a wholly new finding, which superseded that of the commissioner for all purposes. *Burgess* v. *State Compensation Commissioner,* 121 W. Va. 571, 5 S. E. 2d 804; *Moore* v. *Workmen's Compensation Appeal Board,* 118 W. Va. 578, 191 S. E. 292; *Georges Creek Coal Co.* v. *Workmen's Compensation Appeal Board,* 117 W. Va. 89, 183 S. E. 866; *Rasmus* v. *Workmen's Compensation Appeal Board,* 117 W. Va. 55, 184 S. E. 250.

The order of the appeal board, therefore, and not that of the commissioner, comes before us for review, and, of course, it comes with the presumption of correctness. But, while we consider the case strictly as a judicial body, we do have power to reverse the board's finding for error of law or where we find it clearly against the clear preponderance of the evidence. *Goble* v. *State Compensation Commissioner,* 111 W. Va. 404, 162 S. E. 314; *Sedinger* v. *State Compensation Commissioner,* 109 W. Va. 51, 152 S. E. 857; *Caldwell* v. *Workmen's Compensation Commissioner,* 106 W. Va. 14, 144 S. E. 568.

We think the evidence clearly preponderates in favor of the claimant. True, Dr. Murphy concluded that the alleged injury had no connection with the later condition which necessitated the amputation of the finger, but he saw the patient only four times and not at all after June 23rd. The amputation of the finger took place July 18th. During three considerable periods, claimant was the hospitalized patient of Dr. Weiler, who was actively his physician to the time of the hearing, thus being afforded a special opportunity to study the case. This doctor directly attributes the loss of the finger to the injury, in which he is corroborated by another called into consultation later. The fourth doctor testifying states that he

cannot say whether the amputation was caused by the injury from the crane or not. This evidence must be construed liberally in favor of the claimant. *Caldwell* v. *Workmen's Compensation Commissioner*, 106 W. Va. 14, 144 S. E. 568; *Poccardi* v. *State Compensation Commissioner*, 79 W. Va. 684, 91 S. E. 663.

We are clearly committed to the principle that an employee who has the misfortune to be the victim of disease at the time not disabling, and who receives an injury in the course of and resulting from his employment, by which the disease is aggravated or accelerated to the extent of causing earlier or more extended disability than would have ensued without the injury, is entitled to compensation. Schneider's Workmen's Compensation Law (2d Ed.), Vol. 1, section 138; *Hall* v. *State Compensation Commissioner*, 110 W. Va. 551, 159 S. E. 516. In the latter case we said: "The fact that an employee, injured in performing services arising out of and incidental to his employment, was already afflicted with a progressive disease that might some day have produced physical disability, is no reason why the employee should not be allowed compensation, under the workmen's compensation act, for the injury, which, added to the disease, superinduced physical disability."

The order appealed from will be reversed and the case remanded with direction that the order of the compensation commissioner be affirmed.

*Reversed and remanded.*

LOVINS, JUDGE, concurring in result:

I concur in the result reached in this case and in my opinion the law, as expressed in the syllabus, is correct, but I do not agree with the conclusions stated in the opinion in the following language:

"The appeal board may either hear the case on the evidence which was before the commissioner, or take additional testimony, and then 'shall sustain the finding of the commissioner or enter

such order or make such award as the commissioner should have made.' Code, 23-5-3. The hearing before the appeal board was therefore, not a review on error, but a hearing *de novo*. The finding of the commissioner wholly disappears, with all presumptions which have attached thereto. The appeal board displaces the commissioner and becomes the sole fact-finding body to be thereafter considered in the case. The order of the appeal board is a wholly new finding, which superseded that of the commissioner for all purposes."

I believe the foregoing statement is unnecessary to the decision of this case, but there is a more serious objection, in my opinion. Chapter 104, Article 5, Section 3, Acts of the Legislature, 1937, (referred to in the opinion as Code, 23-5-3) defines with some particularity the procedure to be followed by the workmen's compensation appeal board. Both the letter and spirit of this section contemplate a review by the board of the action of the compensation commissioner. The following pertinent parts of the statute seem controlling, "The board shall review the action of the commissioner * * *." "The board may remand any cause as often as in its opinion is necessary for a full development and just decision of the case. The board may take evidence or consider ex parte statements furnished. in support of any motion to remand the cause to the commissioner." The last sentence quoted is the only part of the statute which expressly authorizes the board to take additional evidence, and that evidence is taken in support of a motion to remand and not on the merits of the case. Furthermore, if the board is an unlimited fact-finding agency, why should it review and remand the cases that come before it? This Court in the case of *Rasmus v. Workmen's Compensation Appeal Board,* 117 W. Va. 55, 184 S. E. 250, decided prior to the amendment and reenactment of the statute in 1937, was dealing with a somewhat different statute than that now under consideration.

The appeal board is created by statute. Its powers are

given and defined by the same agency, and should not be enlarged by judicial construction beyond the plain letter of the legislative enactment or the necessary implications thereof. Under the present statute the board has the power to review the action of the commissioner and remand the cause to him for full development and, in my opinion, may only take additional evidence in support of the motion to remand. I find no express or implied authority in the statute for the board to take evidence with reference to any other matter, nor do I find any authority statutory or otherwise for the statement contained in the opinion to the effect that the finding of the commissioner wholly disappears. By the express words of the statute, the board reviews the action of the commissioner. How can the board review the commissioner's action which includes his finding, if that finding disappears upon appeal? Does the rule announced in the opinion apply to a finding of the commissioner where the appeal board takes no evidence? The expression in the opinion creates a needless complication in the administration of the workmen's compensation act. In my view the board should do as the statute authorizes it—review the action of the commissioner, including his finding, and only take evidence on the motion to remand. I do not think the finding of the commissioner should limit the board, but I do believe that the finding of the commissioner should be considered by the appeal board along with the record supporting such finding. Furthermore, I believe that the workmen's compensation appeal board is a limited fact-finding agency on a motion to remand and not otherwise.