HAROLD N. SPENCER,

*(Widower Of Hattie I. Spencer, Deceased)*

*v.*

STATE WORKMEN'S COMPENSATION COMMISSIONER,

AND EMPIRE DRY CLEANERS

(No. 15055)

Decided April 3, 1981.

*McIntyre, Haviland & Jordan & Terry M. Jordan* for appellant.

No appearance for appellee.

MCGRAW, JUSTICE:

This important appeal involves the interpretation and application of our Workmen's Compensation Laws. The principal question presented is: what evidentiary showing of dependency is required of a spouse seeking an award of dependent's benefits under W. Va. Code § 23-4-10 (1978

Replacement Vol.)? We answer that question by holding that the spouse of a deceased worker is presumed to be dependent upon the earnings of the worker for purposes of W. Va. Code § 23-4-10. (1978 Replacement Vol.).[1]

Imogene Spencer and Harold Spencer were married and lived together for more than thirty-two years. Together they had four children, the youngest of whom was still at home. For the last eighteen years they lived on Overbrook Road in Charleston. They both worked for a living. While at her place of employment, Empire-Vogue Cleaners on Oakwood Road in Charleston, Imogene was shot by a robber. Two days later she died. Harold filed a claim for benefits and the compensation commissioner paid for Imogene's hospital and medical bills and her funeral expenses. The commissioner refused to award Harold dependent's benefits and Harold protested. A hearing was held.

Harold testified that he and Imogene had joint bank accounts into which both of them deposited their pay-checks, that they utilized the money to maintain their household and that they were "partly dependent" upon one another.

After the hearing, the commissioner affirmed his prior decision wherein he denied dependent's benefits and the claimant appealed to the Workmen's Compensation Com-

---

[1] W. Va. Code § 23-4-10(d) (1978 Replacement Vol.) reads:

Dependent, as used in this chapter, shall mean a widow, widower, child under eighteen years of age, or under twenty-five years of age when a full-time student as provided herein, invalid child or posthumous child, who, at the time of the injury causing death, is dependent in whole or part for his or her support upon the earnings of the employee, stepchild under eighteen years of age, or under twenty-five years of age when a full-time student as provided herein, child under eighteen years of age legally adopted prior to the injury causing death, or under twenty-five years of age when a full-time student as provided herein, father, mother, grandfather or grand-mother, who at the time of the injury causing death, is dependent in whole or in part for his or her support upon the earnings of the employee; and invalid brother or sister wholly dependent for his or her support upon the earnings of the employee at the time of the injury causing death.

mission Appeal Board. The Board affirmed the commissioner's decision and held that "the record is absolutely void of any evidence indicating the earnings of either the wife or the husband or that the husband was in fact dependent in whole or in part on his wife's earnings as contemplated by W. Va. Code". The record before us, which was forwarded to us by the commissioner, indicates that during the two months prior to the date of injury Imogene earned $675.79, and in the six months prior to the injury Imogene earned $1788.83, and in the twelve months prior to the injury Imogene earned $3510.33, all of which was certified in the employer report of injury filed with the compensation commissioner six days after she died. Even on small points, the record is not as they say.

In its concluding shot before its negative affirmation, the Board said, "[f]rom a reading of the record, we are unable to conclude that the claimant has by proper and satisfactory proof established that on the date of his wife's death he was dependent in whole or in part for his support upon the earnings of the employee". Mr. Spencer testified that he and his wife were partly dependent on each other and that the money they both deposited in joint bank accounts was used to support their family. While it could be said that this testimony tends to be conclusory, it is also fair to say it is the only evidence in the record on this point. If Mr. Spencer's testimony is not well developed, the fault, if any, lies with those who could have taken the opportunity of his appearance to cross-examine him. How is Mr. Spencer to know he has not satisfied his burden when no one was heard to complain that he had not?

Nevertheless, the only question presented by this case is whether, in light of the evidence adduced at the hearing, the Appeal Board was clearly wrong in ruling that Mr. Spencer was not dependent in whole or in part upon Mrs. Spencer. This is purely a question of law. As we held, in part, at syllabus point 3 of *Poccardi v. Compensation Commissioner*, 79 W. Va. 684, 91 S.E. 663 (1917), "where the evidence is all certified and there is no conflict, a question of law, and not of fact, may be thus presented."

The decisions of courts on the matter of the quantum and nature of evidence required of a spouse seeking an award of dependent's benefits reflect various approaches which make it most difficult to lay down a firm rule concerning the required showing. The fault for such confusion cannot be said to rest with the legislature. Since the enactment of the earliest dependency provision, the act has always required a successful applicant to be a member of the class entitled to participate "who at the time of the injury causing death, is dependent in whole or in part for his or her support upon the earnings of the employee . . . ." *Compare* W. Va. Acts 1913, c. 10, § 33(3); Hogg's Code Ch. 15p, § 689, *and* Hogg's Code Ch. 15p § 33(g) (1923) *with* W. Va. Code § 23-4-10(d) (1978 Replacement Vol.). A review of the important opinions construing this language will reveal some of the court's concerns in these matters.

The seminal opinion of *Poccardi v. State Compensation Commissioner*, 79 W. Va. 684, 91 S.E. 663 (1917), involved a case where residents of Italy sought dependency benefits as a result of the death of their son, a West Virginia coal miner. The court noted that the parents were part of the class of persons entitled to recover but that the son had no legal obligation to support them. The evidence revealed that there was no firm indication that the son had in any way supported the parents within the year preceeding his death although he had sent them funds on other occasions. The court denied benefits on the grounds that the son had no legal obligation to support his parents and was not in fact supporting them at the time of the injury causing his death. *Poccardi v. Compensation Commissioner*, 79 W. Va. at 687, 91 S.E. at 664. Thus, the claim was denied because there was no legal relationship which required support nor was there a finding of actual financial dependency.

In *Poccardi v. Ott*, 82 W. Va. 497, 96 S.E. 790 (1918), the court was faced with a claim by a widow, a resident of Italy, whose husband was killed in an industrial accident. The evidence revealed that he had not sent her any money within the year preceeding his death but that he had sent her money on occasion in early years. Although this case is quite similar to *Poccardi v. Compensation Commissioner*,

*supra,* in *Ott,* the claim for dependent's benefits was held compensable. From the facts, it appears that the only difference in those two cases which gave rise to the disparate results is that in *Ott,* the claimant was the deceased's spouse. A valid marriage with its legal duty of support existed in *Ott* whereas in *Poccardi v. Compensation Commissioner,* there was no legal duty of support upon which the court could find dependency.

The emphasis on the nature of the dependent's relationship rather than the peculiar pecuniary status of the claimant and the deceased came into full play in *Coletrane v. Ott,* 86 W. Va. 179, 103 S.E. 102 (1920) *overruled* in *Foster v. Workmen's Compensation Appeal Board,* 118 W. Va. 190, 189 S.E. 703 (1937). In *Coletrane,* the claimant wife and the deceased workman, both from North Carolina, had been living apart for some years in order that the workman could earn a living in the mines. The widow sought dependent's benefits but was refused them because under the terms of the act a widow or widower not residing with the deceased was precluded from an award. 15p Barnes' Code § 36 (1918).

The evidence before the commissioner revealed that the deceased contributed to his wife's support and had written her letters showing "remittances of money and expressions of love and affection for her and his children, and representing his intention to bring her to West Virginia, . . ." 86 W. Va. at 181, 103 S.E. at 102. The court, faced with a prohibition against awarding benefits to a surviving spouse living apart, held that a widow is conclusively presumed to be a dependent for purposes of the act. Further, the court indicated that section 36 of 15p Barnes' Code was not intended to preclude an award where the evidence was clear that a valid marital relation was in existence although the parties lived apart. Rather, the court noted that the section contemplated abandonment of the sort necessary to sustain a divorce action. The court went on to cite cases from other jurisdictions which construed similar statutes in a like manner.

The conclusive presumption of dependency laid down in *Coletrane, supra,* provided difficulty for the court, however,

in the aberrational case of *Foster v. Workmen's Compensation Appeal Board,* 118 W. Va. 190, 189 S.E. 703 (1937). In *Foster,* the record shows that over a period of twenty years the decedent cohabited with three different persons. There was "testimony tending to show that Foster had been married in 1913, [and] had had children by another woman, from whom he had never been divorced". Cohabitant number two, the claimant, was "married" to the decedent in 1928 and he supported her until 1932. In 1932, he left the claimant to take up with the third cohabitant of record and thereafter contributed to the claimant's support only when he was asked to do so and once he gave her a dollar. The claimant testified that she separated from Foster at which time he gave her furniture valued at $800.00 which she sold to support herself.

The facts of *Foster* cloud the issue of dependency just as the "marriage" of the claimant was clouded. Although the court did not cite it, it was the law in West Virginia then, as now, that, as a general rule, a cohabitant is not a "spouse", that is a "wife" or "husband", unless a lawful marriage exists. While the court did not explicitly say so, it was aware of the "cloud" over the marital status of the claimant. The court did not find that the claimant and the decedent were ever legally married and that a duty of support existed and, indeed, the court implied from its use of the word "separated" that no duty to support existed between the decedent and the claimant. While the court claimed that it wrote on the issue of dependency in the marital relationship and that it was overruling *Coletrane,* it cannot be said that it did so on an issue fairly arising from the facts of record as required by our constitution then in effect, W. Va. Const. art. 8, § 5 (1932). Consequently, the court's overruling of *Coletrane* was obiter dicta which is not compelling authority for stare decisis in this court.

From this analysis we see that the central consideration common to all these cases is not how much money changed hands but rather, the legal relationship of the claimant and the deceased. In *Poccardi v. State Compensation Commissioner,* the fact that the worker had no duty to support his parents was the decisive factor in denying benefits. In

*Poccardi v. Ott,* a case with similar financial evidence, the existence of the marital duty to support warranted a finding of an award. In *Coletrane,* the existence of a valid marital relationship with children, even though the decedent was living with someone else, caused the court to create a presumption of dependency to get past a statutory prohibition concerning parties who live apart. In *Foster,* the claim was denied because it was not clear that there was a valid marriage much less a duty of support. Professor Larson indicates that in situations like *Foster,* the court should ignore the lack of a valid marriage if the claimant in good faith thought he or she was married *and* was actually dependent. 2 Larson, *Workmen's Compensation Law* § 63.42 (1980). In *Foster,* the validity of the marriage was questionable at best and there was no showing of actual dependency. We can but wonder at the result in *Foster* if the first undivorced wife had been the claimant. It should be noted in passing that most cases which question the award of dependent's benefits involve situations where the evidence is clear that the marital state contains no dependency or where there is no legal duty to provide support. *See e.g., Atlas Hospital Equipment Co. v. Workmen's Compensation Appeal Board,* 414 A.2d 436 (Pa. 1980); *Domec v. Highlands Insurance Co.,* 286 So.2d 140 (La. 1973); *Affiliated Foods, Inc. v. Blanchard,* 266 So.2d 539 (La. 1972); *Coleman v. Lone Star Packing Co.,* 231 So.2d 721 (La. 1970).

Quite candidly, we believe from our review that since the inception of the compensation act, the court has examined a dependency claim for the nature of the relationship rather than the pecuniary status of the parties. The pecuniary relationship of the parties might well be an important piece of evidence reflecting on the status of the marital relationship but it cannot, in and of itself, defeat a claim for dependent's benefits brought by a spouse. The better rule, and the one we adopt today, is that the spouse of a deceased worker is presumed to be dependent upon the earnings of the worker for purposes of W. Va. Code § 23-4-10 (1978 Replacement Vol.). To the extent that *Foster v. Workmen's Compensation Appeal Board,* 118 W. Va. 190, 189

S.E. 703 (1937) is inconsistent with the principles stated herein, it is hereby overruled. When people marry, the law imposes a mutual duty of support based upon their capacity to do so. While we are unable to divine every fact situation which could rebut this presumption of dependency, the presumption will disolve, of course, on a showing that the legal duty to support is extinguished by the demise of the marriage. It does not evaporate, however, by merely showing that a worker is not fulfilling a duty of support imposed by the law.

W. Va Code § 23-4-10 (1978 Replacement Vol.) requires a showing of dependency in whole or in part upon the *earnings* of the deceased worker. We think logic compels the conclusion that financial dependency is presumed of the marital state. Social, political, legal, economic, moral, emotional, and usually religious concerns constitute, to varying degrees, the dependency which marriage, by its nature, creates. A viable marriage is imbued with many human concerns and these concerns become interrelated through a dependency born of the relationship. These human factors are affected by the economic underpinnings of the relationship, which the Workmen's Compensation law calls "earnings". Even if the wages earned by one spouse are used entirely for that spouse's needs, they contribute to the maintenance of the marital relationship and the other spouse because one spouse has satisfied needs which otherwise would have to be fulfilled by the other spouse. This presumption of dependency in the marital state simply states the obvious; marriage is "a special kind of social and legal dependence. . . ." Webster's New Collegiate Dictionary 698 (1979).

This rule frees the commissioner from the task of making arcane and irrelevant distinctions based upon the pecuniary status of the parties. Instead, the matter can be examined for what it is; a marital relationship. Examining our earlier decisions on the matter, we think this evidentiary presumption has been in practice for some time, although it has never been revealed for what it is. In *Poccardi v. Compensation Commissioner, supra,* we held that a showing of even the slightest dependency will

support an award. As we said there, in part, at syllabus point five, "[t]he word 'dependent', . . . means dependent for the ordinary necessaries of life, for one of his class and social station in life, taking into account the financial and social position of the recipient. The extent or degree of dependency is not important. If dependency existed at all [the] right to participate in the fund is established."

It is clear from this early statement that the rule was formulated not to have the claimant show how much he or she financially depended on the deceased but rather, that the relationship between the two was such that the law imposed a duty of support. All today's rule does is assign to the marital state that thing which the law already assigns to it—dependency. *See* W. Va. Code § 48-1-12(b) (marriage vows).

Even if we were to require a showing of actual financial dependency, Mr. Spencer would still prevail under *Poccardi v. Compensation Commissioner, supra.* The Virginia court recently tackled the problem of the economic evidentiary showing required to support an award of dependents' benefits in *Caudle-Hyatt v. Mixon*, 220 Va. 495, 260 S.E.2d 193 (1979). The Virginia dependency statute, Va. Code § 65.1-66 is similar to W. Va. Code § 23-4-10 (1978 Replacement Vol.) in that both statutes require the claimant to make an initial showing of at least actual partial dependency before benefits may be awarded. Once this showing has been made, the dependent in Virginia is conclusively presumed to be wholly dependent. In considering the evidence adduced at a hearing on the matter, the Virginia court stated:

> The evidence in this case establishes that Lucille Mixon and her husband had both contributed funds towards the purchase of a new home, that they had comingled their funds, and that her husband's salary enabled them to "live a little bit above" the standard of living otherwise attainable. This evidence sufficiently demonstrates that, in actuality, she was at least partially dependent upon her husband. Consequently, under the language of Code § 65.1-66, she is conclusively

presumed to be wholly dependent upon him.

260 S.E.2d at 195.

West Virginia's dependency provision, while not creating a conclusive presumption of the sort found in the Virginia statute, does present a similar scheme by awarding benefits once the claimant makes a threshold showing of dependency in whole or in part. In the context of the marital relation, we think this threshold showing is made by the existence of the relationship itself. While such a presumption may be rebutted, the concept of dependency in marriage should not be made to rise or fall on a purely pecuniary basis. To do so would involve us in the ridiculous task of determining dependency on the relative sizes of paychecks. The Alabama court realized the randomness such an approach would generate when it ruled that a court should look to the intent, not the extent of financial dependence. In *Read News Agency v. Moman*, 383 So.2d 840 (Ala. App. 1980) the defendants argued that because the plaintiff made $130,000 per year and the deceased made $17,000 per year, the deceased's salary could in no way be considered to be necessary for the dependent's support. The Alabama court held:

> "In this instance, as noted above, all of the decedent's salary was placed in a joint-checking account and said funds were used by both parties in payment for necessary living expenses such as food and clothing. Thus, looking to the intent, and not to the extent, of these deposits, it cannot be said decedent did not in any way contribute to plaintiff's support. The fact that the plaintiff also put money into the account and earned a considerable amount more than the decedent does not, as a matter of law, make the plaintiff nondependent under § 25-5-61. Thus, there is evidence to support a finding that the plaintiff was wholly dependent for purposes of the Workmen's Compensation Act."
>
> 383 So.2d at 845

The Alabama court realized that although financial matters are one indicia of dependency, it is the intent of financial support which should be examined, not the extent. Thus, even without applying the presumption of

spousal dependency in this case, the evidence is that both Mr. and Mrs. Spencer's salaries were placed in joint accounts for the purpose of supporting their family. The money was used to buy food, to make house payments, and to purchase other sundry items necessary to their station in life. It should also be noted that Mrs. Spencer had been working for two years, having started her employment at age 50. We think a reasonable inference can be drawn that Mrs. Spencer took a job in order to maintain her family's life style. This is an inference which we are certainly entitled to draw where the facts are clear and undisputed. *Lanier v. State Workmen's Compensation Commissioner*, 160 W. Va. 758, 238 S.E.2d 687 (1977).

We think that the evidence here shows exactly the type of dependency contemplated by the statute.[2] As an aside, counsel argues that were this a claim brought by Mrs. Spencer for the death of her husband, this case would not be before us. Counsel is probably correct. Our workmen's compensation system presupposes that most dependent applications would be filed by widows. This is reflected in the application itself which is entitled "Formal Application For Widow". The form also asks for the applicant's maiden name and if the applicant is now pregnant. Historically, it is probably correct to assume that more widows than widowers would file claims. Nevertheless, such a form reflects a "system that, until not so long ago, denied women the right to vote, to serve on juries, to secure credit, to own and deal with property, to sue and be sued, to make contracts, and even to refuse sex in marriage." *Peters v. Narick*, 165 W. Va. 622, 270 S.E.2d 760, 766, (1980). It appears that the Workmen's Compensation Commission has failed to come fully to terms with the fact that "[n]o longer is the female destined solely for the home and the rearing of family, and only the male for the marketplace and the world of ideas". *Stanton v. Stanton*, 421 U.S. 7, 14, 95 S. Ct. 1373, 1378, 43 L.Ed.2d 688, 695 (1975).

---

[2] Although the commissioner noted that Mr. Spencer offered no evidence of either his or his wife's earnings, it should be mentioned that there is no place on the dependent's application form for such information. Nor was such information requested at the hearing.

The marital relationship has always contemplated dependency of various sorts and it is troubling when one of our government institutions views this dependency, the existence of which is the essence of human survival, with archaic, sexists attitudes. "These sexist attitudes made sacrosanct by the legal structure have been so firmly planted in our national belief that no institution has been free from their taint". *Peters v. Narick, supra* at 766 (footnote omitted). This appears to be the case here.

In light of the fact that the marital relationship presumes dependency and there is no evidence in the record except evidence showing dependency, we hold that "[w]here the preponderance of proof clearly establishes the dependency of the claimant for compensation under the Workmen's Compensation Act, an adverse finding of the commissioner will be set aside". Syllabus, *Hamlet v. State Compensation Commissioner*, 113 W. Va. 247, 167 S.E. 586 (1933).

*Reversed.*