**FILED**

**April 28, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0028, *James A. Moore, Jr. v. ICG Tygart Valley, LLC*

**Armstead, Justice, dissenting:**

The majority opinion finds that the Office of Judges and the Workers' Compensation Board of Review erred by not granting Mr. Moore's request to add cervical radiculopathy as a compensable condition under his worker's compensation claim. The majority finds this error in an alleged failure to rule on this request and in an alleged failure to properly apply our holdings in *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), and *Charlton v. State Workmen's Comp. Comm'r*, 160 W. Va. 664, 236 S.E.2d 241 (1977). The record reflects, however, that the Office of Judges considered Mr. Moore's request to add cervical radiculopathy as a compensable condition and found that the weight of the objective evidence did not support this diagnosis. Because the majority opinion fails to account for this aspect of the record, it likewise fails to apply the appropriate standard of review to this finding of fact and, thus, devotes extensive legal analysis to a medical condition that the law requires us to assume Mr. Moore does not have. Therefore, I respectfully dissent.

The workers' compensation statute provides that when a decision of the Board of Review affirms both the claims administrator and the Office of Judges "on the same issue in the same claim," we may not reverse or modify the Board of Review's decision unless it "is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's *material misstatement or mischaracterization of particular components of the evidentiary record*."

W. Va. Code § 23-5-15(d) (eff. 2021)[1] (emphasis added). This standard of review calls for deference. Indeed, the statute expressly forbids us to "conduct a de novo reweighing of the evidentiary record" and forbids us, further, to reverse or modify a decision of the Board of Review unless we can articulate "with specificity" the "particular components of the evidentiary record" whose "material misstatement or mischaracterization" served as a basis for the decision. W. Va. Code § 23-5-15(d). Thus, when we review the Board of Review's findings of fact, our task is not to review the evidence and decide whether we agree; rather, it is only to decide whether the Board of Review's findings of fact are based on some identifiable instance where the Board of Review misstated or mischaracterized the evidence in a material manner. If we cannot identify such an instance, the law compels us to assume that the Board of Review's findings of fact are correct.

In this case, the Board of Review adopted the findings of fact of the Office of Judges, deeming them "ratified, confirmed[,] and approved[,]" and expressly incorporated them by reference.[2] Therefore, it is proper to begin by examining what the Office of Judges found as fact.

---

[1] After the Board of Review issued its decision in this matter, the Legislature enacted stylistic changes to subsection (d) that do not affect this matter.

[2] Although the Board of Review adopted the findings of fact contained in the decision of the Office of Judges, the Board of Review made several "modifications and [one] addition[.]" One "modification" explains that a referenced October 24, 2017 order granting "a 1% permanent partial disability award" was "issued in a different claim." The remaining "modifications" appear to correct date references in the Office of Judges decision. The "addition" notes Mr. Moore's argument that "radiculopathy or radicular pain should be added as a compensable component of the claim" and "finds that Gill and the

2

Mr. Moore was before the Office of Judges because his surgeon, Dr. France, had asked the claims administrator to add C5-6 *spondylosis* with C6 radiculopathy (diagnostic code M47.22) and neck pain (diagnostic code M54.2) to the claim, and the claims administrator had refused to do so. Dr. France did not, however, ask the claims administrator to add *cervical radiculopathy* (diagnostic code M54.12) to the claim, though his request referred to "attached notes" that contain that diagnosis.

When Mr. Moore appealed to the Office of Judges, it was natural for Dr. France's requested diagnoses—neck pain and spondylosis with radiculopathy—to occupy center stage. Those were, after all, the diagnoses requested by Dr. France and rejected by the claims administrator. In its written decision, the Office of Judges reversed the claims administrator's refusal to add neck pain, finding that "neck pain is already a compensable diagnosis in this claim . . . ." Then the Office of Judges addressed Dr. France's request to add spondylosis with radiculopathy. Here, the Office of Judges noted that spondylosis is a degenerative condition and observed that four different doctors agreed that Mr. Moore's "cervical osteoarthritis or degenerative disease predated the compensable injury in this claim." The Office of Judges expressly acknowledged Mr. Moore's claim that his "compensable injury aggravated . . . [his] pre-existing degenerative disc disease . . . so as to produce a discrete new diagnosis of radiculopathy[,]" but the Office of Judges rejected this claim because a "stand-alone diagnosis of cervical radiculopathy" was not what Dr.

---

subsequent case law do not support the claimant's position." The "addition" goes on to explain, however, that "[t]he modification [sic] is for the purpose of clarifying the ruling regarding neck pain."

France had requested. It further rejected such claim because, "according to the diagnosis used by Dr. France in this claim, the claimant's radiculopathy is a finding or symptom arising from the primary [and non-compensable] diagnosis of spondylosis."[3]

The majority finds fault with this analysis, contending that "the Office of Judges abdicated its responsibility" and "elevated form over substance[.]" According to the majority opinion, the Office of Judges had statutory authority under West Virginia Code § 23-5-9(d) (eff. 2021)[4] to act on Mr. Moore's direct request to add cervical radiculopathy as a compensable condition and erred when it failed to do so.

If the Office of Judges had said nothing further, I might be inclined to agree. However, the Office of Judges went on to make the following detailed findings of fact:

> In addition to the foregoing, the record raises *significant questions regarding the very diagnosis of radiculopathy* in this

---

[3] The Office of Judges went on to find, based on Dr. Jin's testimony, that "the objective medical evidence of record establishes that the compensable event did not result in discrete new cervical injury capable of producing cervical radiculopathy."

[4] West Virginia Code § 23-5-9(d) provides that

> All hearings shall be conducted as determined by the chief administrative law judge pursuant to the rules of practice and procedure promulgated pursuant to § 23-5-8 of this code. Upon consideration of the designated record, the chief administrative law judge or other authorized adjudicator within the Office of Judges shall, based on the determination of the facts of the case and applicable law, render a decision affirming, reversing, or modifying the action protested. The decision shall contain findings of fact and conclusions of law and shall be mailed to all parties.

After the Board of Review issued its decision in this matter, the Legislature enacted stylistic changes to subsection (d) that do not affect this dispute.

4

case. Although the record is replete with medical documentation of the claimant's subjective complaints of upper extremity radicular pain, *the objective medical evidence of record does not support a diagnosis of true radiculopathy.* An MRI of the claimant's cervical spine performed only a few weeks after the compensable injury revealed osteophytes and a diffuse bulge at C5-6 without definite nerve root impingement at the C5-6 level. Thereafter, Dr. Luchs performed a review and assessment of the cervical MRI. Dr. Luchs also found that the MRI showed no evidence of nerve root impingement. More importantly, Dr. Guberman notes in his IME report of November 6, 2018, that an EMG/NCS of the claimant's bilateral upper extremities performed on January 30, 2018, showed evidence of bilateral CTS [carpal tunnel syndrome] with no definitive evidence of cervical radiculopathy. In that regard, it is noted that the record contains no objective imaging or electrodiagnostic evidence to support a diagnosis of true radiculopathy in this claim.

Similarly, *the objective clinical findings of the various evaluators and medical providers of record do not support a diagnosis of radiculopathy.* The record shows that Dr. Jin performed physical examinations of the claimant on February 8, 2017, March 6, 2017, April 10, 2017, May 8, 2017, September 12, 2017, and October 10, 2017. On each occasion, Dr. Jin's neurological examination of the claimant's upper extremities revealed no motor or sensory abnormalities consistent with a true radiculopathy. The record shows that Dr. Vaglienti examined the claimant on April 3, 2017 and May 2, 2017. Like Dr. Jin, Dr. Vaglienti's neurological examination of the claimant's upper extremities revealed no abnormalities consistent with cervical radiculopathy. On June 27, 2018, the claimant was examined by Dr. France. Like Drs. Jin and Vaglienti before him, Dr. France's neurological examination of the claimant's upper extremities revealed no sensory or motor abnormalities consistent with true radiculopathy. Dr. France further noted that the claimant's imaging studies revealed C5-6 spondylosis with mild foraminal narrowing and no other significant pathology. Finally, Dr. Guberman performed an examination of the claimant on November 6, 2018. Like every other evaluator of record, Dr. Guberman's neurological examination of the claimant's upper extremities revealed no motor or sensory abnormalities consistent with a

true cervical radiculopathy. *So, while several medical evaluators of record have diagnosed C5-6 radiculopathy in this claim, those diagnoses appear to have been based solely upon the claimant's subjective complaints, as the record contains little to no objective medical evidence to support such a diagnosis. In light of the foregoing, it is found that the weight of the objective medical evidence does not support a diagnosis of true radiculopathy in this claim.*

(Emphasis added.)

The majority opinion does not properly address these detailed findings of fact. Instead, the majority opinion dismisses them as "pure dictum and not fact finding" and accuses the administrative law judge of "set[ting] his own expertise against that of all physicians who have personally examined Mr. Moore." However, I fail to see how the detailed findings made by the Office of Judges that the evidence *does not support* a true radiculopathy diagnosis can be dictum or anything other than fact finding to support the ultimate conclusions reached by the Office of Judges. Moreover, contrary to the position taken by the majority, the *clear statutory language* requires us to refrain from reversing the Board of Review unless we find "*material misstatement or mischaracterization* of particular components of the evidentiary record." W. Va. Code § 23-5-15(d) (emphasis added). The Office of Judges expressly acknowledged "several" diagnoses that Mr. Moore suffers from radiculopathy, but it rejected those diagnoses because it found that they were "based solely" on Mr. Moore's "subjective complaints" as opposed to "objective medical evidence[.]" The majority does not point to anything in the record that suggests that *this finding* by the Office of Judges, or the detailed summary of the objective medical evidence that preceded it, somehow *misstates* or *mischaracterizes* the record. In the absence of such

6

a finding, we have no statutory basis to reject the Board of Review's *clear* finding that Mr. Moore was not properly diagnosed with cervical radiculopathy; indeed, our standard of review requires us to assume that this finding is correct.

Because—in the absence of necessary statutory findings—the law requires us to assume that Mr. Moore was not afflicted with cervical radiculopathy, we have no cause to ponder whether this alleged condition amounts to a "discrete new injury" for purposes of *Gill*, 236 W. Va. at ___, 783 S.E.2d at 858, syl. pt. 3, or an aggravation or acceleration of preexisting disc disease for purposes of *Charlton*, 160 W. Va. at 664, 236 S.E.2d at 241, syl. pt. 2 (quoting Syl. Pt. 3, *Manning v. State Comp. Comm'r*, 124 W. Va. 620, 22 S.E.2d 299 (1942)).  We have even less cause to direct the Board of Review to add C6 cervical radiculopathy (diagnosis code M54.12) as a compensable condition under Mr. Moore's workers' compensation claim when the Board of Review has expressly found that he does not suffer from this condition.  For these reasons, I respectfully dissent.